# SCHUYLKILL RIVER ETC. R. CO. v. A. E. STOCKER ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILA-
DELPHIA COUNTY.

Argued April 9, 1889—Decided October 7, 1889.
[To be reported.]

1. In a proceeding to assess damages arising from the construction of a railroad, it is error to allow a witness to value a part of the property and to state the effect of the road upon the value of that part alone, as it violates the rule fixing as the measure of damages the difference between the value of the land as a whole before the building of the road and its value after.

*(a)* A witness in such a cause, a conveyancer and real estate broker, had investigated the selling prices of several properties one or two miles from the farm in question ; he had gone upon, inspected, and estimated the value of 32 acres of the farm affected by the railroad, and had seen the remaining 52 acres in passing along the highway, but had never been upon it.

2. Such witness was a competent witness to express his opinion as to the effect of the railroad upon the whole tract, but it was not permissible for him to value the 32 acres separately and to give his opinion as to the effect of the railroad thereon, though stating that he excluded the rest of the farm from consideration because in his opinion unaffected by the railroad.

3. A sewing machine agent, not residing in the vicinity of the land in question, who as a special agent had made efforts to sell a neighboring property, but was not shown to have other means of knowledge as to land values in the neighborhood, was incompetent to express an opinion as to the value of the land in question and the effect of the railroad upon it.

4. Testimony that a witness had improved a parcel of ground eight squares distant from the land in question and nearer to the built up portion of a city, by building on it many dwellings, and that building operations were still in progress, is inadmissible to show the value of the land in question for future building purposes, because introducing into the inquiry a speculative element not legitimate.

5. When assessed valuations of the property for purposes of city taxation were admitted in evidence without objection, it was not error for the trial judge to remark, in charging the jury, that personally he did not consider the assessments as evidence of value between the owner and railroad company, but that being in evidence they were matters for the jury to consider in connection with the other testimony.

6. In valuing a farm within the corporate limits of a city and upon whica streets have been laid out upon the city plans but not yet opened, the jury may properly consider the value of the lands as affected by the fact that city streets are plotted upon it and some day may be opened, though it is not proper to consider such streets as if they actually had been opened.

7. A refusal of the court to permit the jury to take with them on retiring, either the original or a copy of an affidavit made by one of the land-owners in behalf of himself and the others, in support of an application for a reduction in a tax valuation, which had been received in evidence and read to the jury, was not error.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 233 January Term 1889, Sup. Ct.; court below, No. 510 December Term 1886, C. P. No. 4.

On December 14, 1885, the Schuylkill River East Side Rail-road Company presented its petition for the appointment of viewers to report what damages were occasioned by the appro-priation for railroad purposes of certain land belonging to Anthony E. Stocker and others. The viewers appointed in accordance with the prayer of the petitioner subsequently re-ported, awarding to said Anthony E. Stocker and others, as damages, the sum of $7,098. An appeal having been taken from this award by the landowners, an issue was framed to determine what amount of damages, if any, they were entitled to by reason of such appropriation, in which issue, said Anthony E. Stocker, et al. were made plaintiffs, and said railroad company defendant.

At the trial of this issue, January 3, 1888, the following facts were shown.

The plaintiffs were the owners of a tract of land containing about eighty-four acres, and known as the Stocker farm, situated in the southern limits of Philadelphia and within the Twenty-sixth ward. The northern end of this land was at a point near Sixteenth street, as plotted on the city plans, and from this point the boundary lines of the tract diverged, running to the southeast and southwest respectively. Oregon avenue, also a plotted street, was laid out running east and west across the tract and intersecting these diverging boundary lines, so that the portion of the land lying north of Oregon avenue was in

the form of a triangle. The part lying south of Oregon avenue was of irregular shape and contained a larger acreage than the triangle to the north. It extended for five or six squares south of Oregon avenue, and the lower part of it was crossed by the Greenwich extension of the Pennsylvania railroad. A number of other streets were plotted as crossing the farm, but none of them were opened except Moyamensing avenue which was an old country road. The defendant in the spring of 1885 located its road through this farm along the middle of Oregon avenue, and about December, 1885, gave bond to the plaintiffs and subsequently constructed its road as located.

Nathaniel E. Janney, a conveyancer and real estate broker, was called by the plaintiffs to testify respecting the value of the property in question. He stated that he had some knowledge on the subject of land values in that neighborhood; that in 1887 he had made inquiries as to the prices at which lands were there held, specifying a number of persons of whom he had inquired their asking prices, all of whose properties were located at a considerable distance from the Stocker property, varying from one to two miles; that he had visited the Stocker farm for the purpose of ascertaining its value in May or June, 1887; that he looked over the property fully, excepting the portion south of Moyamensing avenue; that he was familiar with the latter portion, and knew the lay of the ground, etc., from passing along the avenue frequently, but had not gone upon it. He was then asked to state at what figure he valued the ground on Oregon avenue, along the line on which the defendant's railroad was laid.

Objected to.

By the court: Objection overruled; exception.[1]

The witness then answered that in his judgment the ground on Oregon avenue was worth $5,000 per acre.

Q. The tract north of Oregon avenue, at what do you value that per acre? A. I had just fixed in my mind values covering that general piece. . . . .

By the court: Are you able to state what the value was in December, 1885? A. I should think, from my judgment, there was no material difference in the value between 1885 and the time I examined it.

Objected to by defendant.

By the court: Objection overruled; exception.[2]

The examination of the witness then proceeded as follows:

Q. The tract of land north of Oregon avenue containing thirteen and a fraction acres, you say, was worth $5,000. A. Yes, sir. When I spoke of $5,000, I took the general section there. The ground commencing at the northernmost point is worth a little bit more, and going below or about Moyamensing avenue a little less. I averaged it all up at $5,000 an acre.

Q. What, in your judgment, do you consider has been the effect of building the railroad along Oregon avenue? That is to say, what has been the effect upon this property?

Mr. Addicks: Before that question is asked, I think the attention of the witness should be directed to the entire property.

Mr. Johnson: That was meant to be the question.

Mr. Addicks: I do not understand that the witness has fixed the value of the entire property before the taking.

By the court: The effect of his opinion thus far is that in December, 1885, in his judgment, the value of that property was $5,000 an acre.

Q. What do you consider has been the effect to the plot of ground which you have indicated here in your testimony by the building of the railroad?

Objected to; the attention of the witness must be directed to the entire property.

Mr. Johnson: This question we propose to be followed by the question to the witness as to his judgment of the effect of this railroad upon the balance of the property south of the point which he has indicated. That is, we do not propose to take the whole tract in bulk and ask him the question; we propose to ask him its effect upon the particular portion of the tract which he has described, and then to ask him what, in his judgment, is the effect upon the residue of the tract.

Objected to.

By the court: Objection overruled; exception.[3]

The witness then testified that the portion of plaintiffs' land lying north of Oregon avenue, and that part south of said avenue and between it and Moyamensing avenue, together aggregating 31.8 acres, had been depreciated by the building of defendant's railroad twenty per cent of their value, or $31,800, to which he added the value of the ground taken, amounting

to $8,470, making in all $40,270; that he made no estimate upon that part of the land south of Moyamensing avenue, as he did not consider that it was materially affected by the rail-road, either injuriously or beneficially. His testimony is more fully stated in the opinion of the Supreme Court.

Andrew Miller, a witness called by plaintiffs, testified that prior to the construction of defendant's railroad he had bought a large lot of ground situated on Sixteenth street, eight squares north of the Stocker farm. He was then asked:

Q. How did you develop that lot? A. I opened Chadwick street first and built.

Objected to.

By the court: What is the fact that you propose to prove?

Mr Hart: I want to show what he did there; what character of houses he built, and what is the character of the improvements in that particular neighborhood and their extent, and that it is going down further now below him.

Objected to.

By the court: Objection overruled; exception.[4]

The witness then testified that in the fall of 1885 he opened Chadwick street and built 28 houses on it, and other houses later; that in all there had been erected 162 houses on that square and 112 on the square below it, and other buildings had been and were still being erected in the immediate neighborhood, describing the character of some of these buildings.

The defendant offered in evidence the official tax assessment for the year 1885, valuing the Stocker property at $40,000, which was admitted without objection. The defendant then offered the assessment for 1884, to show that so far as the investigations of the tax department were concerned, the land had not changed in value between 1884 and 1885.

Objected to.

By the court: I do not know on what ground an estimate made by a public officer becomes evidence as against a private citizen. I will exclude it; exception.[5]

Mr. Cassidy: I propose to renew this offer for 1884 for the purpose of showing that the assessment that is already admitted of 1885, was not spasmodic or mere accident, but it was a continuation of a regular and organized system of assessment.

Objected to.

By the court: Objection sustained; exception.[6]

The court, however, admitted an affidavit made in 1884 by Anthony E. Stocker stating that the valuation of the farm for that year, $42,000, was greater than the sum which the property would bring at a fair sale, and asking for a reduction.

The defendant offered in evidence the record of the appeal of the Pennsylvania Railroad Company at No. 262 January Term 1887, the decision in which is reported in 116 Pa. 55, for the purpose of showing that the defendant had been delayed in the construction of its road by an injunction; that the litigation therein did not terminate until April 11, 1887; and in connection therewith offered the assessments for 1887 and 1888, showing the assessed values of the Stocker farm during the period in which the defendant was stopped by legal proceedings from completing its road.

Objected to.

By the court: Objection sustained; exception.[7]

Robert E. Peterson, being called by defendant, testified that he was a sewing machine agent, residing at Wayne, Delaware county, Pa.; that he had had charge of the Bouvier estate, two tracts of land containing about 100 acres altogether, situated near the Stocker farm, and used for truck farming; that about three years prior to the trial he had had some negotiations for the sale of this property. The following question was then put to him:

Q. Can you state from your knowledge from having charge of that property and negotiating for its sale, what the general market value of such land was in that neighborhood, including the Stocker property, in 1885, before the Schuylkill River East Side Railroad Company constructed its line.

Objected to.

By the court: Objection sustained; exception.[8]

Frederick Sylvester, a witness for the defendant, was cross-examined by the plaintiffs as follows:

Q. Will you state what other property you inquired concerning? A. Property of Walter Freeman. Q. Where is that? A. That is between Seventeenth and Eighteenth and Passyunk road, facing Passyunk road. Q. Had he the property for sale? A. Yes, sir. Q. What price per acre? A. He held it and holds it at $5,000 an acre.

In explaining his views respecting the value of the Stocker farm, the witness said:

Some portion of that land is exceedingly high, and would be very much above grade.   Just at present none of it is available for any purpose, except for trucking purposes, farming purposes.   The nearness to the railroad has been of very little benefit to it; the Pennsylvania Railroad.   The streets are not opened.   Any person who purchased that property would have to calculate to make very heavy expenditures, in addition to the first cost, for the cost of opening the streets, street improvements, and all the expenses incident to developing a large tract of land.   My calculation would be, before a man commenced to build, if he paid $2,000 an acre, the land would stand him almost as much more in the shape of cost of improvements and interest on his money.

At the conclusion of the testimony, the court, WILLSON, J., charged the jury in part, as follows:

*        *        *        *        *        *        *        *

A property of this kind, situated, as this is, in the outlying parts of the city, as you probably know, and if you do not know from experience, you have heard enough in this case to satisfy you of the fact, derives its large value, where it has a considerable value, from the fact that it has proximity to a large city like ours.   Of course, if this property was situated out in Chester county or Delaware county, were mere farming land, nobody would suppose that it had any such value, as we say perhaps all the witnesses conceded it had.

This property, according to some evidence in the case, possibly has a rental value of $2,000.   That has been so stated.   If that be the rental value of it, taking it as a tract of eighty acres, which is approximately the amount of acreage, it would rent at $25 an acre.   You and I all know that, while that might fairly represent the value of the ground for farming purposes, or for such trucking purposes as it is used for, it would not fairly or fully represent the value of ground which was in the market and ripe for use for building purposes.   It would not anywhere nearly represent a proper income upon an acre of ground; an acre of ground, I mean, which is available for improvements and for building.   That shows to you what I

wish to call your attention to; that a matter of great importance in connection with the question which you will have to consider is, how nearly ripe this property is for development for building purposes. That will have a great deal to do with determining what, in your judgment, should be found to be the real market value of this property per acre.

　　　*　　*　　*　　*　　*　　*　　*　　*

You are to bear in mind that you are to determine the value of this ground, when you come to consider the improvements, not by what it may be twenty-five, thirty or forty years hence, but you are to consider it according to what its value was at the time the railroad appropriated it. Of course, the prospective future value of ground, the prospective uses of ground tend to assist; they do assist in arriving at a correct estimate of the present value, because the present value of ground, particularly ground such as this is, depends very largely upon its probable future uses. This ground for farming purposes would not probably be worth anywhere near what all would agree it is worth. What gives it its very great value, its considerable value, above what it would be for farming purposes is that it is regarded as sometime or other likely to be needed for building purposes.

　　　*　　*　　*　　*　　*　　*　　*　　*

I do not intend to go into any elaborate continued discussion of the evidence of the witnesses stating different values. I propose to leave that to you upon the evidence which you have heard, and upon the basis of the arguments which have been made in your hearing this morning. I want to call your attention to the fact that the value of the ground taken ought to be determined by you, as I have already said, upon one aspect of the case, according to the condition of that ground at the time when a part of it was taken. You have had placed before you such a plan, showing streets marked out upon that ground. I believe it is conceded that none of these streets are opened through this ground, except Moyamensing avenue and Broad street. There is none of the ground upon the east side of Broad street. Excepting Moyamensing avenue, you are to remember that these streets are not actually opened. They have been laid out upon plans, plots upon paper, in other words, as indicating what the municipal authorities have determined,

Charge of Court below.

for the time being, to be the plan upon which people shall work and estimate and talk. There is no definite reason to suppose that those plans will ever be altered. There is the right, undoubtedly, given to the authorities of the city to modify those plans, and they may possibly be modified, but no intelligent person, who is competent to give an opinion as to the value of the ground, could base it upon anything else than the present plan or plotting of those streets.

You are to regard the property, therefore, when you attempt to fix the value, as property situated within a certain distance of the city, plotted for streets to be opened some day or other when the necessities of the city, when the growth of population or the interest in that locality, shall make it desirable, but yet not actually opened; you are to determine the value of the ground as it stands with those streets so plotted, not taking into consideration the hypothetical cases of the possible alteration hereafter, but taking them as they stand. If that property, so situated, so marked for streets, with such improvements indicated for the future, was injured by the appropriation of ground by this railroad to any extent, so that its market value was less after the ground was taken than it was before, for the amount of that difference the plaintiffs are entitled to a verdict, with interest from the time the ground was appropriated, which approximately is December, 1885. If you think that the result of the taking was to improve the property, then there ought to be a verdict for the defendant. I mean, if it improved the property so that, as a net result, there would be no loss to the plaintiffs.

\* \* \* \* \* \* \* \*

As to the money value per acre of this ground you have heard testimony of different witnesses, and I do not intend to go over that in detail. Some witnesses have put the value down as low as $1,500 an acre, and some have put it as high as $5,000. Some of those who have put it the highest have perhaps been influenced in their reasoning and in the formation of their opinion, to a considerable extent, by the value of ground at some distance north of this. The value of such an opinion would depend, it seems to me, but it is for you to say, very considerably upon the extent to which improvements had gone and the probability of their being carried farther south to

Charge of Court below.

within very close proximity of, or upon, this particular property, within a comparatively limited period of time. If you are satisfied upon the evidence that these improvements are likely to go down on this property within a short period of time ; if you think that that is so evident that it must affect the market value of this property, it would be perfectly proper for you to put a larger estimate on the value of this property than you otherwise would be justified in doing. [There is property, if I remember rightly, which Mr. Sylvester said ᴴ.ᴴ represented, which is still nearer than that I had in mind, in the neighborhood of Moore street, property belonging to the Freeman estate, upon which he put a large value. If he has correctly represented the value of that property, then you may think that the value of this property would be larger than that put upon it by some of the defendant's witnesses.] [9]

\*     \*     \*     \*     \*     \*     \*     \*

[There has been evidence introduced into the case on the subject of assessed value of this property. I do not propose to deal with this subject at any length. The evidence was produced without objection, and, therefore, it is evidence proper for you to consider. Personally, I do not consider that the estimate put upon ground by the assessors of the city, confirmed by the board of revision of taxes, is evidence as between the different owners of the ground, or as between the owner of the ground and the railroad company, to determine the value of that ground. The assessor might be called for the purpose of expressing his opinion, but I do not know any principle of law which makes the opinion, when put in the form of an assessment upon the records of the city, calling them records perhaps somewhat loosely, evidence between third parties in a controversy of this character. The evidence has come into the case and it is matter for you to consider, in connection with all the other evidence in the case, in arriving at your own independent judgment as to what the value of the ground taken was, and as to the effect of that taking upon the entire tract from which it was taken.] [10]

That is all which I propose to say to you upon this subject.

The defendant's counsel requests the court to charge [inter alia] :

5. The jury in this case should not treat the plotted streets

on the Stocker farm as opened streets or as city streets, in determining the value of the property, as such streets might at any time be changed as to their direction, width or grades, by the municipal authorities, and would require the making of extensive municipal improvements before they could be made available. But the jury are to consider the value of the Stocker farm before the taking by the railroad company, with reference to the streets or roads actually opened through, to, or along the Stocker farm, as well as the physical characteristics of said farm, in determining its value in 1885.

Answer: I do not affirm that point as it is stated. I have already instructed you upon that subject, as I believe, correctly. You are to take the ground just as it was at the time when this road went through it. So far as the streets were actually plotted at that time, if the grades then laid affected the market value of that ground, then you are entitled to consider them. Whether or not there will be any changes such as the city might make, you have no knowledge. These matters could only affect the opinions of persons who were called to testify as to the value of the ground, as they existed, as they were apparent to anybody familiar with the ground; and to that extent, they might have had something to do with determining what a proper estimate should be.[11]

6. The fact that the entire property of 84 acres was assessed in 1885 at $40,000 should be considered by the jury in fixing its fair market value. The law requires that the assessment shall as nearly as possible represent the price that a property would bring at a fair public sale after due notice.

Answer: I have already said to you what I have to say on the subject of assessments. Subject to what I have said, I affirm that point.[12]

7. In considering the assessed value of $40,000 of 1885, and its relation to the real or market value of the property, the jury are entitled to consider that the assessment of 1884 was also $40,000, and that it was made after an application for abatement supported by an affidavit of Anthony E. Stocker, as executor of the estate of Caroline Stocker, deceased.

Answer: Subject to the instructions which I have already given you upon the effect of the assessed valuation, I affirm that.[13]

The counsel for the defendant proposed to hand to the jury letters, papers, etc., which were admitted in evidence. The counsel for the plaintiffs objected to the paper containing the affidavit of Anthony E. Stocker being allowed to go out with the jury, on the ground that upon the back of it was contained the following memorandum, signed by the assessors, viz. :

" Report on within applications. The within property is assessed 69 a. at $550 (upland) per acre; 15 a. meadow land at $250 per acre. This property is assessed on Moyamensing avenue north and south side extending to Broad street. In 1883, property owned by Brinton Corliss, about two blocks south of Stocker's, was sold for $750 per acre to a party named Garrity. We, therefore, do not think the property assessed too high. January 31, 1884."

Defendant's counsel then asked that a copy of the affidavit might be handed to the jury, whereupon the court declined to allow the jury to take with them either the original affidavit, or a copy of it; exception.[14]

The jury rendered a verdict in favor of the plaintiffs for $14,500. A motion for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ, assigning for error :

1–4. The admission of plaintiffs' offers.[1 to 4]

5–8. The rejection of defendant's offers.[5 to 8]

9, 10. The parts of the charge embraced in [ ] [9 10]

11–13. The answers to the defendant's points.[11 to 13]

14. The refusal to permit the affidavit of Anthony E. Stocker or a copy thereof to go out with the jury.[14]

*Mr. William H. Addicks* (with him *Mr. Lewis C. Cassidy*), for plaintiff in error:

1. Janney was not qualified as an expert to testify respecting values. His first investigations on the subject were made in 1887, after the construction of the railroad had largely increased the asking price in the neighborhood. He had not examined the whole of the property. He had examined and attempted to value only about forty acres of it, and was an incompetent witness : Pittsb. etc. Ry. Co. v. Vance, 115 Pa. 325; Pittsb. etc. R. Co. v. Reed, 44 Leg. Int. 92. Under the

reasoning of the cases which prohibit proof of particular sales as evidence of market value, the testimony of Andrew Miller as to the special development of property many squares north of the Stocker property, in an entirely different situation, should have been excluded as raising a misleading side issue entirely irrelevant to the case: Pittsb. etc. Ry. Co. v. Vance, 115 Pa. 331; Pittsb. etc. R. Co. v. Patterson, 107 Pa. 464. Robert E. Peterson should have been allowed to testify. He would seem to have had all the qualifications called for by the rule laid down in Pittsb. R. Co. v. Reed, 44 Leg. Int. 92.

2. The part of the charge covered by the 9th assignment adversely affected the defendant's case. Mr. Sylvester in his testimony did not put a value upon the Freeman property. He merely stated that the owner held it at $5,000 an acre as an asking price. And he explained in his testimony that this, property was nearly a mile north of the Stocker property, and even the latter, at $2,000 per acre, would cost a purchaser $4,000 per acre by the time streets were opened and loss of interest allowed for. Defendant's fifth point ought to have been affirmed. To treat the Stocker land as in the same condition for market as the Freeman lot, for instance, nearly. a mile nearer the heart of the city, is not in accord with the common practice in dealings among men. In many of the lower courts all such evidence tending toward a misleading speculative standard of comparison has been eliminated: Lodge v. Railroad, 10 Phila. 153; In re Passyunk Ave., 2 Pa. Co. Ct. Rep. 269; In re Fifty-second St., 19 W. N. 205. This court held in In re Plan of Pittsburgh, 2 W. & S. 320, that the plotting of streets on a town plot was merely notice of possible future streets and not a taking or opening of streets. Pittsb. etc. R. Co. v. Patterson, 107 Pa. 464, which has gone as far in allowing valuation according to a special use as any case decided by this court, restricts the consideration of special adaptability to a particular use to cases in which the property is actually so applied.

3. While the judge, in answering defendant's sixth point, affirmed the principle that the assessed valuation is evidence to be considered, he so qualified the affirmance as practically to deny it. Such a qualification is ground for reversal: Willey v. Allegheny City, 118 Pa. 490. It is not contended that

these assessments are conclusive, but that they do amount to some evidence: Lukens v. Philadelphia, 13 W. N. 86; Philadelphia v. Michener, 7 W. N. 558. The public tax assessments in Philadelphia are not mere ex parte statements of the assessors. The board of revision sits as an appellate assessment court, with quasi judicial powers, and there is a further appeal to the Court of Common Pleas. The record of the assessment is public, and is made evidence in relation to the title of the property: § 1, act of March 14, 1865, P. L. 320; § 2, act of February 2, 1867, P. L. 137; § 4, act of April 12, 1873, P. L. 715. The assessments in this case were not made ex parte. Hanover Water Co. v. Ashland Iron Co., and cases from Massachusetts, which plaintiffs rely on, construe different laws from those in force in Philadelphia county.

*Mr. John G. Johnson* (with him *Mr. Gavin W. Hart,*) for the defendants in error:

1. Mr. Janney was qualified to testify as an expert respecting values: Pittsb. etc. Co. v. Reed, 44 Leg. Int. 92; Pittsb. etc. Ry. Co. v. Vance, 115 Pa. 325; Pittsb. etc. R. Co. v. Robinson, 95 Pa. 426; Penna. etc. R. Co. v. Bunnell, 81 Pa. 425; Pittsb. etc. R. Co. v. Rose, 74 Pa. 368; White Deer Cr. I. Co. v. Sassaman, 67 Pa. 415; Hartman v. Railroad Co., 22 W. N. 84. We submit that a real estate agent and broker of twenty years' experience in all parts of the city, who had made inquiries in the locality as to asking prices, was familiar with the property for years, and examined it specially, was a competent witness. The testimony of Andrew Miller was in answer to a claim by defendant that the Stocker property was out of reach of all improvements, and it was competent to show that a large lot a few squares north, which was lately a truck patch, had been solidly built up, and improvements were steadily pushing south from that point. Peterson was not competent. He did not pretend to know the market value of land in the neighborhood. What was said by the judge concerning Sylvester's testimony was legitimate comment. In determining the weight to be accorded to his opinion that the Stocker property was worth but $2,000 per acre, the jury might well consider the fact that the Freeman property, only one or two squares to the north, was held at $5,000 per acre.

2. The plotting of certain streets through this property was as much a fact to be considered by the jury as the opening of others. To ignore them would be to ignore a very important element in ascertaining values. As the assessments for 1884 and 1885 were finally admitted in evidence, the only question here in connection with them, is the correctness of the answers to defendant's sixth and seventh points. Instead of receiving a qualified affirmance, these points should have been entirely refused. The assessments being ex parte statements of opinion, not subjected to the test of cross-examination, are not entitled to any effect. However the rule may be when the city of Philadelphia takes property for municipal purposes, they are not evidence of value in favor of a railroad corporation: Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279; Randidge v. Lyman, 124 Mass. 361; Commonwealth v. Heffron, 102 Mass. 148; Stanfield v. Stiltz, 93 Ind. 249. But aside from this, the judge's expression of his personal opinion to the jury cannot matter, in view of his telling them that the assessments had come into the case and were for their consideration.

3. The affidavit of Dr. Stocker was a mere expression of opinion that was not admissible against his co-tenants. Being admitted, the full effect was accorded it when read to the jury. Depositions cannot be taken out by the jury; why should this paper? The refusal to allow it to go out was not reviewable on error: Spence v. Spence, 4 W. 165; Hamilton v. Glenn, 1 Pa. 342; O'Hara v. Richardson, 46 Pa. 388; L. S. N. Co. v. Richards, 57 Pa. 148; Shomo v. Zeigler, 10 Phila. 614. Moreover, it was impossible to send out the affidavit without allowing the jury to see irrelevant declarations indorsed thereon, and there was no warrant for sending out a copy not in evidence.

OPINION, MR. JUSTICE GREEN:

The witness, Nathaniel E. Janney, was examined on behalf of the plaintiffs to prove the amount of damage done to the land of the plaintiffs, by reason of the location and construction of the defendant's railroad upon and through it. The entire property is a tract of unimproved land, containing about eighty-four acres, lying in the southern part of Philadelphia. Oregon avenue and Moyamensing avenue are streets plotted, but the

former not opened, traversing the tract east and west and parallel to each other.    The whole tract is continuous and extends north of Oregon avenue and south of Moyamensing avenue. The railroad is laid upon Oregon avenue, running across the tract, and takes about one and seven tenths acres.    No streets are opened on the tract, except Moyamensing avenue, which was an old country road recognized on the public plans.    The property extended about five or six squares north and south of Oregon avenue.    Mr. Janney being interrogated as to his acquaintance with the property, said that he had visited it for the purpose of ascertaining its value in the early part of 1887.    He said he looked over the property fully except the portion south of Moyamensing avenue, he did not go into that; he had been familiar with it from passing along the avenue, but not at this time.    He made inquiry as to the selling price of several properties at a distance of one to two miles from the Stocker farm. He was then asked to state at what figure he valued the ground along Oregon avenue, along the line upon which the railroad was built.    To this objection was made, but the question was admitted under exception, and the witness proceeded to testify that he valued the ground on Oregon avenue at $5,000 per acre.    He was then asked to value the part of the tract north of Oregon avenue, when, after replying that he had just fixed in his mind the value of that general piece, he was asked to state its value in December, 1885, to which he replied that in his judgment there was no material difference in value between 1885 and the time he examined it, which was in 1887.    This evidence was objected to and admitted under exception.

The further examination of the witness developed the fact that the land along Oregon avenue consisted of two pieces, one north of the avenue containing a little over thirteen acres, and the other south, about eighteen acres, and these two pieces the witness valued at $5,000 per acre.    He was then asked to describe the effect of building the road upon these two pieces, which being objected to on the ground that the witness must testify as to the effect upon the whole property, the objection was overruled, it being stated by counsel that the question would be followed by asking the witness as to his judgment of the effect upon the entire property.    Exception was taken by the defendant, and the witness then testified that the effect was to

depreciate the whole of the property immediately north and south of Oregon avenue, containing together thirty-one and eight tenths acres, twenty per cent of its value, which with the ground taken amounted to $40,270. He next answered that he thought the railroad would not affect the value of the part below Moyamensing avenue, one way or the other. On cross-examination he was asked: " Q. Give the value of the entire Stocker farm prior to December, 1885? A. I have never made any calculation of the value of that portion of the farm south of Moyamensing avenue, for the reason that I gave a moment ago. I did not consider, looking at it, that that piece of ground was affected materially one way or the other by the presence of the road. I took the ground that I supposed to be affected, which, according to the plan submitted to me, contained about thirty-two acres, thirty-one and eight tenths acres. Q. What are these thirty-one acres worth? A. I supposed they were worth $5,000 an acre. Q. Down to the line of Pennsylvania railroad or beyond it? A. To Moyamensing avenue is my line. Q. No; I mean the property to the south. A. As I say, I made no estimate of value upon it at all. Looking over it, I considered that the only parts of the estate that were affected by that, either injuriously or beneficially, were the pieces running from the northern limit to Moyamensing avenue. The other I made no estimate of. Q. Can you not give me the value of the Stocker farm below Moyamensing avenue in 1885? A. No, sir; I am not prepared at once to give you any figure upon that. Q. Have you never looked at it? A. Oh, yes; I have seen it frequently. Q. There is part of it where the Pennsylvania Railroad runs through for four or five squares? A. Yes, sir. Q. That part of it that lies along Broad street? A. Yes, sir. Q. What is your valuation for that? A. I have never fixed any valuation on that at all. Q. You have never valued the entire property of the Stocker estate before this Schuylkill River East Side Railroad was located over it? A. No, sir; not the entire tract, for the reason that I gave." He further said that he valued the two pieces on Oregon avenue in December, 1885, at $5,000 an acre, and after the road was built at $4,000 an acre, and that he did not take into account in any way the piece south of Moyamensing avenue, except that he satisfied himself the railroad did not affect it one way or the other.

It will be seen that this witness, having testified that he did not visit the farm for the purpose of judging its value until in the spring of 1887, and had only seen, in passing, the part of it south of Moyamensing avenue, was permitted to, and did testify, that he had valued a part of the farm only, containing about thirty-two acres; that he had not valued the remainder of it which contained about fifty-two acres; had taken no account of it, and had determined in his own mind that the part he did value was worth $5,000 an acre in December, 1885, though he had not visited it nor investigated its value at that time at all, and that this part of the entire property, less than half of the whole, was depreciated in consequence of the railroad to the extent of 20 per cent of its value, which would leave a resulting value of $4,000 an acre in 1887. The value in 1885 was reached by an inference that there was no material difference in the value of the land between 1885 and 1887; and then, being of opinion that the other part of the farm, fifty-two acres, was not affected by the railroad, he values the depreciation of the thirty-two acres at $31,800, and the ground taken at $8,470. He does not give the depreciation of the whole, or even a view of the whole property, as affected by the road, but considers that one part has been depreciated by itself, and the other part has not been affected; and therefore his testimony might be used with the jury to show that the depreciation of the part is the representation of the effect of the building of the road upon the market value of the whole. This is certainly not in accord with the letter or spirit of the rule which has so long been the law in this state, that the difference between the market value of the whole property, before and after the building of the railroad, is the measure of the damage to the owner. In the case of Pittsburgh etc. Ry. Co. v. Vance, 115 Pa. 325, we held a witness to be incompetent to testify to the damages occasioned by the location and building of a railroad, in circumstances somewhat similar to those developed in this case. He was only acquainted with a part of the farm; he knew nothing of the other part, and his estimate was made only as to the part he did know.

In view of all the testimony of Mr. Janney, we cannot say he was entirely incompetent as a witness, because he had seen the lower part of the farm in passing along the road, and he

had visited the remaining part and had estimated its value. But, in point of fact, he made no valuation of the larger part of the property, with which he was comparatively unacquainted, and he gave no estimate of its value as it was, either before or after the building of the road. It was never taken into his calculation; on the contrary, he excluded it from his consideration. It is true, he said he thought it would not be affected by the railroad, but that consideration does not relieve either the witness or the jury from the necessity of complying with the rule of law which requires that the whole, not a part, of the property shall be valued as it was before the road was built, and again as it was after it was built. It is the difference between these two valuations which constitutes the measure of damages. But if a witness may select a portion of the whole property affected by the building of a railroad, and determine the extent to which that alone is damaged, without valuing or even examining the remainder of the property, it is evident that both the letter and the spirit of the rule will be violated. We are, therefore, of opinion that when the witness was allowed to testify to the value of a part only of the property in question, and the consequent damage sustained by that part alone, without having valued or examined the remaining part, error was committed which requires us to sustain the first three assignments. Without a careful examination of the remaining part, and having in mind the whole scope of the inquiry, the witness could not tell with any certainty whether his own views might not change as to it, after a thorough inspection of the land, and a consideration of the effect of opening the railroad in such close proximity. It is not enough that he should say, in a general way, that he thought the railroad would not affect it one way or the other, when he at the same time says he did not visit it, never had been over it, and had only seen it in passing along the road. He is testifying as an expert, and should qualify himself as such by at least investigating the subject-matter of his testimony.

We think, also, the fourth assignment must be sustained. The evidence admitted under this exception took entirely too wide a range, insomuch that the learned court below felt obliged to interfere, and say that it exceeded the limits of the admission. The witness had bought a square of ground be-

tween Tasker and Morris streets and Sixteenth and Seventeenth, at a considerable distance from the Stocker farm, and much nearer to the built-up portion of the city. Under objection and exception he testified that he opened and built on the west side of Chadwick street twenty-eight houses; on Seventeenth street, twenty-five; on Sixteenth street, twenty-five; and Bancroft, fifty-six, and that these building operations were conducted up to the time of the trial of this case. The effect of such testimony might easily be to give the jury an exaggerated idea of the value of the ground as the scene of future building operations. While expectations in this regard might be realized in the future, a speculative element is thus introduced into the inquiry which is not legitimate. No one could possibly know whether similar results would follow upon a property so much greater in extent and so much farther removed from the closely built-up portions of the city. Sanguine anticipations might just as easily be disappointed as fulfilled by the actual course of events upon this property, and then the whole basis of the computation would disappear. The proper and legitimate inquiry in all these cases is, What was the actual market or selling value of the property, just as it was, immediately before the land was taken for the railroad, and what was its same value after the completion of the road?

Of course, the possible uses of the ground may be considered and estimated by the witness in forming his opinion, but it would be highly dangerous to permit verdicts to be founded upon a consideration of future speculative operations which may never transpire, and whose results whether profitable or otherwise cannot possibly be known in advance. We passed upon this subject in the case of Pennsylvania Schuylkill Valley R. Co. v. Cleary, 125 Pa. 442. We there held that "the jury are to value the tract of land and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. . . . . They are not to inquire what a speculator might be able to realize out of a re-sale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in." If all this is true of the very land over which the railroad is laid, how much more true must it be when the evidence relates to another and different tract, differently situated,

and at a considerable distance from the tract under consideration? We think this testimony was inadmissible, and therefore sustain the fourth assignment.

We do not sustain the eighth assignment as we do not think the witness, Robert E. Peterson, was sufficiently qualified to testify.

We think the remark of the learned judge complained of in the ninth assignment, cannot be regarded as either a direction, or even the expression of an opinion that the value of the Freeman estate, as testified to by Sylvester, should affect the estimate by the jury of the value of the Stocker farm. It was a mere passing observation as to what the jury might think, not a suggestion that they should think in any particular way on the subject referred to. This assignment is dismissed.

We do not think there was error in the answer to the defendant's fifth point. While it is true the jury should not consider the streets as opened streets, they might with propriety consider the value of the land as affected by the consideration that city streets were plotted upon it and might some day be opened, and this was all the court said in replying to the point. The eleventh assignment is not sustained.

We think the fifth, sixth, seventh, tenth, twelfth, thirteenth, and fourteenth assignments are not sustained. The assessed valuations were in reality admitted in evidence and might be considered by the jury for what they were worth. This the charge allowed. What the court said about the value of an assessor's opinion as expressed in the assessment, we do not regard as error. These assignments are dismissed.

Judgment reversed, and new venire awarded.