WADSWORTH LAND COMPANY v. PIEDMONT TRACTION COMPANY AND CHARLOTTE ELECTRIC RAILROAD COMPANY.

(Filed 28 May, 1913.) .

1. Public-service Corporations—Street Railways—Rights of Way— Use by Separate Corporations—Additional Burden—Damages.

An electric street railway corporation having acquired a right of way for its own use over private lands, may not grant to another such corporation the right to likewise operate thereon, requiring the use of additional poles, etc.; for the use thereof by the second corporation imposes an additional burden upon the lands, for which the owner is entitled to compensation.

2. Public-service Corporations—Street Railways—Rights of Way— Condemnation—Damages, Speculative—Evidence.

In the admeasurement of damages to be awarded to the private owner of lands for the acquiring by a public-service corporation of a right of way thereon, the jury should consider the present condition of the property condemned and the uses to which it was then applied, and those for which it was naturally adapted, so as to arrive at the difference between the market value of the lands before and after the appropriation of the right of way; but so far as the same may not fall within this rule, damages are speculative and too remote which allow for intended or future improvements, such as laying off the property into lots and their development by the expenditure of money;

the making of a park of unproductive lands, etc.; nor is it competent to show a comparison of values with lands of or near the same city which had already been developed, etc.

APPEAL by defendant from *Webb, J.,* at January Term, 1913, of MECKLENBURG.

*Burwell & Cansler, Tillett & Guthrie, and Maxwell & Keerans for plaintiff.*

*Osborne, Cocke & Robinson and Pharr & Bell for defendants.*

CLARK, C. J.   The defendant the Charlotte Electric Railroad Company had acquired from the grantors of the plaintiff the right of way to maintain and operate its street railway system. The Piedmont Traction Company, under contract with the Charlotte Electric Railroad Company, is operating its freight and passenger interurban cars over the right of way which had been acquired by said Electric Railroad Company, and has erected additional poles, wires, and other apparatus thereon for its own purposes, and, besides, since this action began has instituted a proceeding before the clerk to condemn said right of way for the additional burdens thus placed on it, and also to condemn 21 additional feet in width for its use. By consent, the two proceedings have been consolidated in this action.

Exception 1.   The court properly held that the Electric Railroad Company could not convey to the Traction Company the right to impose the additional burdens, but that the plaintiff was entitled to compensation therefor. The Traction Company is imposing a new burden and service upon said right of way, and is clearly liable in damages therefor to the plaintiff for its use of the 24-foot right of way used by the Electric Railroad Company, as well as for the value of the additional 21 feet, which the Traction Company is now seeking to condemn. This has been very fully discussed and demonstrated in *Phillips v. Telegraph Co.,* 130 N. C., 520; *Hodges v. Telegraph Co.,* 133 N. C., 225; *Brown v. Power Co.,* 140 N. C., 334; *Beasley v. R. R.,* 145 N. C., 272. In *McCullock v. R. R.,* 146 N. C., 318, the Court said, upon facts very similar to these: "The plaintiffs are entitled in this action to have permanent damages assessed, in the nature of condemnation, for the additional burden placed

upon the lot by its use for purposes other than those for which defendant uses the lot purely as lessee of the North Carolina Railroad Company. *Hodges v. Telegraph Co.,* 133 N. C., 225, in which case this proposition is so clearly and fully reasoned out by *Connor, J.,* with full citation of authorities, that further discussion here would be idle repetition."

Passing by the other exceptions, we think, however, that his Honor erred in admitting evidence as to the speculative uses to which the owner intended to put the property and as to its contemplated improvement and in allowing the jury to consider these matters.   The assignments of error presenting these points are Nos. 3, 5, 6, 11, 13, 16, 18, 34, 41, 48, 49, 50, and 60.   Of these, 3, 5, 13, 16, 18, and 34 are exceptions to the admission of evidence, over objection by the Traction Company as to the intention of the owner to convert a part of its property, consisting of about 100 acres of bottom-land, into an artificial park.  Nos. 6 and 11 are to the admission of evidence as to the probable value of the lots into which the property might be subdivided.   No. 34 is to the refusal of the court to instruct the jury, as requested, that they could not consider this intended development by the owner of the property.   Nos. 48, 49, 50, and 60 are to the charge wherein the court instructed the jury that they should take into consideration the plans of the owner for the future improvement of the property and the uses to which it was intended to be put.

In *Brown v. Power Co.,* 140 N. C., 33, which we reaffirm, the Court held that it was proper for the jury to take into consideration, not only the present condition of the property condemned and the uses to which it was then applied, but also all other uses to which it might be applied for which it was naturally adapted.   In the present case, the plaintiff was allowed to go beyond this rule, and show the uses to which the owner intended to put the property and its future improvement.   The plaintiff proved, without objection, the capabilities of the property and all the uses for which it contended the property was adapted, its nearness to the city of Charlotte, and that the property as a whole was well situated for development as a residential section.   To all this no objection was offered by the

Traction Company. The error was in permitting the plaintiff to go further, and to show that 100 acres of this property, consisting of bottom-land not suited for development as a residential property, but subject to overflow, the owner intended to make into a park and beautify it, by laying off walks and building summer houses and otherwise, and that such improvement would enhance in value the remaining portion of the property. We think this was too remote, and improperly enhanced the damages allowed. It was purely speculative, and should have been excluded.

In Elliott Roads and Streets, 273, it is said: "It is held that although it may be proper to show the location and surroundings and the uses to which the land is adapted, yet it is not competent to prove by the owner the use to which he intends to devote it." Among many cases to support that proposition are *R. R. v. R. R.,* 103 Va., 399; *Pinkham v. Chelmsford,* 109 Mass., 225.

In *R. R. v. Stocker,* 128 Pa., 233, it was held that the jury could not value a tract upon the theory of what it might bring when platted and divided up into building lots; but they could inquire what a present purchaser would be willing to pay for it in its present condition, and not what a speculator might be able to realize out of a resale in the future. To same purport, *R. R. v. Abell,* 18 Mo. App., 637; *R. R. v. Cleary,* 125 Pa., 451.

In 2 Lewis Em. Dom., 1056, 1057, it is said: "The conclusion from the authorities and reason of the matter seems to be that witnesses should not be allowed to give their opinion as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown; if such peculiar adaptation adds to its value, the owner is entitled to the benefit of it. But when all the facts and circumstances have been shown, the question at last is, What is it worth in the market?" To the same effect, *Boom Co. v. Patterson,* 98 U. S., 403; *R. R. v. Humphreys,* 90 Va., 436.

The court also erred in admitting the evidence as to the value of other property, and the sales of specific parts thereof, and in

charging the jury that they might consider such evidence in arriving at their verdict. Assignments of error Nos. 27, 28, 29, 31, and 33 were to the admission of evidence to the above effect, and No. 47 was to the charge to the jury on that point. Such evidence was held incompetent in *Warren v. Makeley,* 85 N. C., 12; *Bruner v. Threadgill,* 88 N. C., 365; *Cline v. Baker,* 118 N. C., 782; *Rice v. R. R.,* 130 N. C., 380; *R. R. v. Patterson,* 107 Pa. St., 463.

In *R. R. v. Patterson,* above cited, the Court said: "It is well settled by numerous decisions of this Court that the proper measure of damages where lands are taken for railroad purposes is the difference between the market value of the land before and after appropriation of the right of way. And it seems to be equally well settled under the law of this State that evidence of particular sales of alleged similar property, under special circumstances, is inadmissible to establish market value. . . . The selling price of lands in the neighborhood at the time is undoubtedly a test of value; but it is the general selling price, not the price paid for particular property. The location of the land, its uses and its products and the general selling price in the vicinity, may determine the market value. The price which, upon a consideration of the matters stated, the judgment of well informed and reasonable men will approve is the market value. A particular sale may be a sacrifice compelled by necessity, or it may be the result of mere caprice or folly. If it be given in evidence, it raises an issue collateral to the subject of inquiry, and these collateral issues are as numerous as the sales. . . . The introduction of evidence of particular sales is, therefore, not allowable under our decisions to establish market value."

The evidence as to sales of other property was to sales of property in residential suburbs of Charlotte which had already been developed by the laying out of modern improvements, and had already been largely settled as home sections. The plaintiff was erroneously permitted by this evidence to compare its property not similarly located with property already developed, upon the ground that it intended to develop this property by the expenditure of large sums of money.

These errors entitle the defendants to a new trial, and it is not necessary to consider the other assignments of error, though it may be said, without passing an authoritative opinion, that it does not now seem to us that there are errors in the other exceptions.

Error.