## IN RE APPROPRIATION OF PROPERTY OF COOLEY ELLIS BY OHIO TURNPIKE COMMISSION

Ohio Appeals, Sixth District, Lucas County.

No. 4778. Decided February 17, 1955.

Bowman, Hanna & Middleton, Bowling Green, for plaintiff-appellant.
Taylor, Cruey & Kelb, Toledo, for plaintiff-appellant.
Frank C. Dunbar Jr., General Counsel, Columbus, and Fuller Harrington, Seney & Henry, Toledo, for defendant-appellee.

(HURD, PJ, KOVACHY, J, SKEEL, J, of Eighth District sitting by designation in the Sixth District.)

## OPINION

By HURD, PJ.

This is an appeal on questions of law from a judgment entered upon the verdict of a jury in an action originating in the common pleas court of Lucas County. Plaintiff-appellant is Cooley Ellis, the land owner, and defendant-appellee is the Ohio Turnpike Commission, the parties being sometimes referred to herein, respectively as "Ellis" and the "Commission."

This appeal involves a proceeding instituted by the Commission to appropriate property of the landowner familiarly known as "Storer Field" consisting of an irregularly shaped tract of land of approximately forty-five acres, lying north and east of the intersection of the Anthony Wayne Trail and Detroit Avenue in the City of Maumee, and in the vicinity of the property involved in an action between the same parties in appeal No. 4777 on the docket of this Court. The property is bounded by the two highways mentioned and by the right of way of the Toledo Terminal Railroad and by privately owned lands.

It is the contention of appellant that because of the location of this property and its ready accessibility from other parts of Toledo and Lucas County, by reason of the main arterial highways converging at and near the property, the same is ideally suited for the development of a shopping center, it being conceded by both parties that the entire property has been zoned for commercial purposes. It is also conceded that the right of way of the Ohio Turnpike cuts diagonally across and through the property in an easterly and westerly direction from the intersection of the two highways upon which the property abuts.

It is further the contention of the appellant that because of the non-access features of the Anthony Wayne Trail and because the residue of the property, after the taking, is landlocked, there is a complete isolation and total destruction of the value of that portion lying northerly of the right of way with the result that only twenty-two acres of land remain accessible and that this tract of twenty-two acres is too small for the development of the contemplated regional shopping center.

The jury returned a verdict for Ellis in the sum of $40,000 for eight and five-tenth (8-5/10) acres, as compensation for the land taken for the turnpike right of way, and $56,825.00 as damages to the residue, or a total sum of $96,825.00.

The property owner contends that as the entire value of the property

is lost for all practical purposes, the verdict is grossly inadequate as the direct result of errors committed in the trial of the cause.

Appellant assigns as ground for reversal many errors, some of which were likewise assigned in cause No. 4777. The errors assigned are as follows:

1. The court erred in refusing to dismiss this proceeding at the preliminary hearing, and in overruling the owner's motion to dismiss, the undisputed evidence showing that there was a failure to comply with mandatory provisions of the statute, §5537.06 R. C., requiring a bona fide offer and a resolution declaring the necessity of the appropriation before such proceeding may be brought.

2. The owner was deprived of a fair trial by the misconduct of counsel for the commission in his opening statement and the court erred in denying a mistrial and in failing to take any action to withdraw this matter from the consideration of the jury.

3. The court erred in admitting evidence of what Ellis had paid for the subject property.

4. The court erred in admitting evidence of the price paid for other properties and in refusing to exclude this evidence from the jury.

5. The court erred in admitting a purported financial statement of Ellis, exhibit 37, in evidence, and in refusing to withdraw this exhibit from the consideration of the jury.

6. The court erred in permitting the witness, Schenck, to testify as to his opinions of values.

7. The court erred in permitting the witness, Rupert, to testify as to his opinion of values.

8. The court erred in excluding the testimony of the witness, Welch, as to his opinion of values.

9. The court erred in excluding evidence of the potential sales of the shopping center which represented the best use of the subject property

10. The court erred in excluding plans and diagrams exhibits 17-a and 17-b, which illustrated the best use of the property.

11. The court erred in excluding a lease of a part of the property. exhibits 32 and 32-a, and in refusing to permit the cross-examination of the Commission's experts in relation thereto, or in relation to rentals generally.

12. The court erred in excluding a notice relating to a sale of one of the alleged comparable properties (exhibit 41).

13. The court erred in stating in the presence of the jury that Ellis was not qualified as an expert to testify as to the limited use of his remaining property after the appropriation.

14. The court erred in refusing to receive evidence in rebuttal relating to traffic.

15. The court erred and abused its discretion in limiting time for argument.

16. The court erred in giving to the jury before argument request No. 2 of the Commission.

17. The court erred in its general charge to the jury in charging on the

subject of the sign rights and in failing to charge on the abutter's rights appropriated.

18. The verdict and judgment are each contrary to the manifest weight of the evidence.

We shall not discuss these assignments of error seriatim nor shall we here discuss at length asignments of error passed upon in Appeal No. 4777, between the same parties, covering other lands, which are common to both appeals.

Error is assigned to the effect that counsel erroneously was permitted in his opening statement to the jury, to say:

"The evidence will show that under the law it is possible to get private right of way over the railroad. The Terminal Railroad runs down here. The evidence will show that the law permits under certain circumstances, private right of way so we believe that when you hear all the evidence, you will conclude that isn't isolated—so that—forever—so that you can get into that other than by helicopter or balloon."

The record shows that before the introduction of evidence, counsel for the owner requested that the foregoing statement be withdrawn from the jury, which was overruled by the court. Counsel for the Turnpike Commission argue that refusal to withdraw from the jury such a statement was not erroneous, citing **Gratz v. Lake Erie & Western R. R. Co., 76 Oh St 230,** in which it was held that irrespective of the statute, one who holds property on both sides of a railroad, regardless of when acquired, has a right to install a private crossing at his own expense. That case has no application to the instant case. Here, the evidence clearly shows that Ellis does not own the property on both sides of the railroad, as the railroad itself forms a border to the owner's land and even if he were able to acquire a right of way across the railroad, which is doubtful, it would be of no value, unless in some way he acquired the land on the other side of the railroad. We think this statement of counsel, which obviously could not be substantiated by evidence, was prejudicial and an error which could have been cured if the trial court had granted the motion to withdraw the statement from the jury, which the trial court upon request refused to do. It is true that considerable latitude is allowed counsel in opening statements but counsel should not be permitted to make statements of law or fact which are obviously erroneous or over objection discuss questions of law with the jury in opening statements, questions of law being peculiarly within the exclusive jurisdiction of the court. In this case, a specific request having been made to instruct the jury to disregard the statement and the same having been overruled, we think the assignment of error is well taken and should be sustained.

The case of **Breyman v. Penna. R. R. Co., 43 Oh Ap 473,** while relating to similar conduct in final argument, should be equally applicable to opening statements when attention of the trial court is timely directed to the statements with the request to withdraw the same before evidence is presented. In that case the court said at page 480:

"Plaintiffs in error claim that to so argue was improper, and that the court should have intervened and said so to the jury. We also think that this should have been done. This court has heretofore emphasized the

duty of a trial judge in this regard, and repetition will serve no good purpose. Suffice it to say, a trial judge may not remain silent when his attention has been called to a patent impropriety, however inadvertent and unintentional it may have been on the part of counsel. Unfortunately, righteous motives expressed in inept words are likely to be misunderstood. Counsel did not retract what he said, the court remained silent, and it is difficult to say what effect this statement of counsel had upon the minds of the jurors when they came to deliberate upon what the verdict should be. The suggestions made by counsel gave the jury an opportunity to play upon their imaginations as to the possibilities that in fact should not have been considered by nor suggested to them, and we are therefore of the opinion that to so argue without retraction by counsel or suggestion by the court as to its impropriety, under the circumstances presented by the record, was prejudicial error."

Errors are assigned to the exclusion of certain testimony of one Kenneth C. Welch of Grand Rapids, Michigan, a witness for the owner, and to the exclusion of certain plans and sketches marked exhibits 17-a and 17-b prepared by him, as showing the highest and best use of the subject property.

The record contains an imposing list of the qualifications of this witness as an expert, a detailed recital of which is unnecessary here. It should be noted, however, that he qualified as an expert city planner, consultant and architect, primarily in respect to commercial areas, including regional and community shopping centers. He had made numerous surveys of properties for regional and community shopping centers involving three burroughs in New York City,—Kings, Queens and the Bronx; one in Philadelphia; two in the Kansas City area; one in Omaha, Nebraska; and Dearborn, Michigan; two in Canada—Hamilton and Toronto; a center halfway between Bridgeport and New Haven, Connecticut and what is more important, as far as this case is concerned, four in the Toledo area, one each at the corner of Sylvania and Douglas; Franklin Field; Secor and Central Avenues and one known as the Village Shopping Center.

He testified that in arriving at a conclusion as to the highest and best use and maximum value of Storer Field, he took the following factors into consideration; access to traffic, concentration of population; drawing power of center; time distance; competition; purchasing power of people in area; past retail sales in the area by types; annual sales in dollars and cents; influence of the turnpike; zoning; highway capacity; future growth of the area; and terrain (natural contours).

We think the record shows this witness eminently qualified by reason of education, knowledge and experience, particularly in respect to his previous surveys of four other Toledo properties used as shopping centers, to testify as to his opinion of the highest and best use of the subject property and its maximum value for such use.

Evidence was produced tending to show that Storer Field was ideally situated and that its highest and best use was as a regional shopping center, this being the type of center on which is located stores of all classes of merchandise.

The plans, sketches and lay-outs (marked exhibits 17-a and 17-b)

were properly identified but objection was sustained to the offer in evidence of these exhibits, as illustrating the highest and best use of the property, on the ground that it was an attempt to show a particular use of the property, as distinguished from a general use. A proffer was made for the record, but the plans were excluded. The witness testifed that he was familiar with the value of commercial properties in the vicinity of the subject property, but on objection was not permitted to testify as to his opinion of the values of the subject property at the time of the taking, or as to the use and value of the remainder after taking.

The record shows that the witness was asked as to the best use of the remainder after the appropriation of the right of way. The record then shows the following:

"* * *

"I am going to ask you to state whether or not—what, in your opinion, would be the best use of that property after the appropriation of the right-of-way indicated there, by the Ohio Turnpike?

"MR. HARRINGTON: If that is calling for a general use, I have no objection; if he is calling for a particular use, we do object.

"MR. CRUEY: We have already had evidence of what the entire parcel's best use would be. Certainly, after the Turnpike had acquired it, he should be able to testify what the best use of the remainder was.

"THE COURT: Ladies and gentlemen of the jury, you may retire again. (Thereupon, the jury retired to the jury room.)

"THE COURT: The trouble with that question is if he gives his opinion as to the best use, that is a particular use.

"MR. TAYLOR: That is true, Your Honor, but we can also show the best use of the property, that would be true.

"THE COURT: Any particular use. That is the trouble with the question.

"MR. HARRINGTON: That's what he started to give.

"THE COURT: That's what he wants to give, as a matter of fact. No doubt about that.

"MR. TAYLOR: In order to give the best use of a piece of property, Your Honor, you give a particular use. You can't help it.

"THE COURT: THEN IT IS IMPROPER.

"MR. TAYLOR: It is necessarily included. The Schaeffer case says you can show the highest and best use of the property.

"MR. HARRINGTON: Not a particular use.

"THE COURT: NOT A PARTICULAR USE, AND IT SAYS THAT IN PLAIN WORDS."

From the foregoing, and other evidence, in the record, it is clear in this case as in appeal No. 4777, that counsel for the Turnpike Commission, as shown by their objections, and the trial judge as shown by his rulings. were of the opinion that it was improper to show any particular use of the subject property, even though the exclusion of such evidence prevented the land owner from producing evidence as to the best and highest use of the property. By reason of the exclusion of such testimony by the expert witness, the land owner's offer to show the highest and best use of the prop-

erty and the maximum value for any purpose for which its use was available was denied.

We are of the opinion that evidence tending to show a particular use was admissible because in logic and reason the highest and best use of the property cannot be shown without giving one or more particular uses for which it may be available. It is our view that the objection that such evidence was interdicted by the case of **Sowers, Supt. v. Schaeffer, 155 Oh St 454,** is not well taken.

An examination of the facts of the Schaeffer case, and the case of **Goodin v. Cincinnati & Whitewater Co., 18 Oh St 169,** is necessary to a correct interpretation of the phrase "not for any particular use" carried into syllabus 3 of the Schaeffer case.

Without detailing the facts at length in the Schaeffer case, supra, suffice it to say that in all there were forty buildings on the property, thirty-four of which were homes owned either by the Schaeffers or by various lessees; six of the buildings were classed as commercial buildings. The complaint in that case was made that it was not proper on direct examination to admit testimony as to the income from the business conducted on the property. The court passing on that question stated: that there was no testimony admitted as to income from business on the property, but testimony was received as to the rentals which Schaeffer received from the dwellings, and as to the nature of the business as to which the property was adapted. The court held that such testimony was competent.

In so holding the court said, at page 458:

"In our opinion, this testimony was competent. In estimating the value of property in an appropriation proceeding, it must be valued as to its worth generally, not for any particular use, but for any and all uses for which it may be suitable.

The true value of anything is what it is worth when applied to its natural and legitimate uses—its best and most valuable uses. **Goodin v. Cincinnati & Whitewater Canal Co., 18 Oh St 169.**

In ascertaining the amount which should be allowed in an appropriation proceeding, the jury should take into account not only the purposes for which the land is or has been applied, but any other beneficial purpose to which it may be applied. **Cin. & Springfield Ry. Co. v. Excrs. of Longworth, 30 Oh St 108.**

In the present case, the property involved was developed for recreation, summer home and permanent home purposes, and in ascertaining its value as a whole it is essential to show the value of the improvements, the rental value thereof and the nature of the businesses which can be suitably carried on upon the premises."

The facts in the case of Goodin v. Cin. & Whitewater Canal Co. supra, are much more complicated and we shall advert to only such as bear upon the present issue.

In that case, Welch, J. speaking for a unanimous court, discussed inter alia the question of the value of the property of the Canal Company under appropriation proceedings. The facts showed that through fraudulent means, the president and directors of the Railroad Company had gained control of the Canal Company and then transferred the property of the

Canal Company to the Railroad Company at a grossly inadequate price, under an agreement which could not be sustained in equity and the only remedy remaining was by condemnation proceedings. As the railroad had already acquired the property as a railroad right of way, the court found in a suit brought by minority stockholders of the Canal Company. **that the property was of little value as a canal,** that as such it was **"played out"** and **"of no value as a canal."**

The court held that the estimate should have been of its value generally for any and all uses and **not for any particular use such as a canal,** which as such had no value, the court qualifying the words "and not for any particular use" with the words "and especially not for any inferior, or non-appropriate use." This doctrine was embodied in the fourth paragraph of the syllabus which reads as follows:

"The rule of valuation in such cases is what the interest of the canal company was worth, not for canal purposes merely, or for any other particular use, but what it was worth generally, for any and all uses for which it might be suitable."

We can readily deduce from the Schaeffer case and from the Goodin case that the words "not for any particular use" were used for the benefit of the land owner, and not for the benefit of the condemner. That is, in arriving at a conclusion of the value of the land taken, the land owner is not limited to evidence of any particular use, but may present evidence "for any and all uses for which it might be suitable." Applying the language of the Goodin case in which it was first used, it is clear that the Canal Company was not confined in evidence to a showing of what the land was worth for **"canal purposes merely, or for any other particular use** but what it was worth generally for any and all uses for which it might be suitable." (Emphasis added.) In other words, the phrase "not for any particular use", as used in the syllabus of the Schaeffer case, and the phrase, "not for canal purposes merely, or for any other particular use" contained in the syllabus of the Canal case, were words not of limitation upon the land owner as contended by counsel for the Commission, and concurred in by the trial court, but words of limitation upon the condemner by reason of which the condemner could not prevent a showing of the maximum value to the owner for any and all purposes for which the use of the land was available, including one or more particular uses—the weight of such testimony being for the jury under proper instructions.

This interpretation is confirmed by the later Supreme Court case of **Langaneau v. City of Cleveland, 159 Oh St 525 (1953) syl 3,** which reads:

**"It is the duty of the court in an appropriation proceeding to afford the property owner the right to fully show the extent and character of the real estate proposed to be taken and its maximum value for any purpose for which its use is available, including the use which is presently made of it."** (Emphasis added.)

As to the plans, sketches and layouts proffered in evidence and rejected by the court, we hold that the same were admissible for the reasons above set forth, and for the reasons discussed in our opinion in the case of Ellis v Turnpike Commission decided by this court in appeal No. 4777, on the docket of this court, in support of which we cited **Railway v. Longworth,**

**30 Oh St 108; Sowers, Supt. v. Schaeffer, 155 Oh St 454** and **Langaneau v. City** of Cleveland, supra.

We hold, therefore, that the testimony of the witness Welch, except as to estimated potential income from commercial business, should not have been excluded, either on the ground that the same was an attempt to show a particular use, or that he did not show sufficient qualifications to permit him to testify as to the highest and best uses of the subject property and its maximum value for which its use was available.

Error is likewise assigned here, as in Appeal No. 4777, to the admission of evidence, concerning sales of alleged comparable properties, concerning a sale of 8.8 acres of land by the county commissioners of Lucas County, by advertisement in a newspaper requiring sealed bids subject to a condition that the purchaser waive any claim for damages by reason of the construction of the Ohio Turnpike. We held in Appeal No. 4777 that the admission of evidence of this character as a comparable sale was erroneous as it was subject to unusual conditions of waiver and was not in the nature of a free sale negotiated between a willing seller who was not obliged to sell and a willing purchaser who was not obliged to purchase. However, additional error is assigned here because on objection the court excluded from the evidence exhibit No. 41 being a legal notice of said sale by the Commissioners, setting forth in substance that the Board of County Commissioners of Lucas County would offer for sale upon receipt of sealed bids the property therein described by metes and bounds for cash to the highest responsible bidder, the successful bidder and purchaser being required to furnish a written waiver of any and all claims for damages to said real estate by reason of the construction of the Ohio Turnpike. The record shows that Exhibit No. 41 was offered, refused and then re-offered, and again refused, despite the fact that comparable testimony was allowed in Appeal No. 4777. Assuming for the purpose of discussion only, that the court was correct in admitting the evidence of this sale, it certainly was prejudicial error in any event to exclude evidence of the unusual terms and conditions under which the sale was conducted by the county commissioners.

Complaint is also made that the court, in the presence of the jury, remarked that Ellis was not competent as an expert to testify as to the limited use of the remaining property The evidence shows that he was a developer of real estate and a builder for twenty-eight years and in addition thereto had made a study of shopping centers with a view to building a shopping center on the subject property.

Considering all evidence appearing in the record, it is our opinion that he showed ample qualifications to testify as an expert as well as an owner of real estate and the ruling and comment of the court that he was not an expert was erroneous because it unnecessarily deprecated in the presence of the jury the testimony of the owner and may have had an adverse effect upon his testimony as a witness.

Coming now to a consideration of the complaint that the judgment is manifestly against the weight of the evidence, there certainly is grave doubt as to the adequacy of the verdict, but the three judges being unable to agree that the verdict is manifestly against the weight of the evidence, this assignment of error is overruled.

Error is assigned because of refusal of the court to receive testimony in rebuttal relating to traffic conditions for which counsel for Ellis sought a short continuance from 3 P. M. to the following day at 9 A. M., when the Commission rested its case prior to the time its' counsel had indicated. We think this was a matter within the sound discretion of the court, but as the request was a reasonable one, we think it should have been granted, which could easily have been done without any prejudice to the Commission.

Error is assigned in this case, as in Appeal No. 4777, that the court erred in admitting a purported financial statement of Ellis which the evidence failed to show was authorized by him but which purportedly had been used in litigation incident to a divorce case between Ellis and his former wife, which extended for a period of more than three years and terminated in a divorce in August, 1951, a little over two years before this appropriation case was instituted. This financial statement, marked Exhibit 37 in this case, was allowed in evidence over the objection of Ellis and the court overruled a motion to withdraw the same from the consideration of the jury.

For the reasons stated at some length in our opinion in Appeal No. 4777, we hold that the domestic difficulties of Ellis with his former wife and his total financial worth represented by the statement (the subject property being shown at cost six years before) should not have been admitted in evidence and the request to have it withdrawn from the consideration of the jury should have been granted. The statement was completely irrelevant to any issue in this case and was highly prejudicial as discussed in our opinion in Appeal No. 4777.

Error is here assigned in permitting the witness (Schenck) for the Commission to testify as to sales and values of other properties, based solely and exclusively on information gleaned from examination of public records, considerations shown on deeds and computation of revenue stamps on deeds.

For the reasons set forth in our opinion in Appeal No. 4777, decided contemporaneously herewith, we hold that such evidence was inadmissible and constituted error, as mere hearsay, and inadequate proof of the competency of the witness. Furthermore, public documents speak for themselves and if their contents are admissible for any purpose, the best evidence rule requires their production in open court.

We have reviewed the other others assigned herein, but find no others of a prejudicial nature.

It is our view, however, that for the reasons herein set forth the appellant was not afforded a fair trial and that therefore the judgment of the Court of Common Pleas should be and the same is reversed and the cause remanded for further proceedings according to law.

A journal entry may be drawn in accordance herewith. Exceptions noted.

KOVACHY, J, concurs.

SKEEL, J, dissents for the reasons as set forth generally in the dissenting opinion filed in Appeal No. 4777, rendered contemporaneously herewith.