STATE HIGHWAY COMMISSION v. E. R. CONRAD AND SALLY D. CONRAD.

(Filed 15 January, 1965.)

1. **Eminent Domain § 6—**

   Where the parties consent that use as a residential subdivision is the highest and best capability of the land condemned, the court may admit in evidence a proper map for the purpose of explaining the testimony of the

witnesses in this regard, but the exclusion of a drawing showing the division of the tract into a maximum number of lots without regard to topography or the exigencies of a practical subdivision, will not be held for error, certainly when the jury is permitted to view the property and observe for itself its nature and location.

**2. Same—**

The court properly refuses to permit a witness to testify that he arrived at the value of the tract condemned by multiplying the maximum number of lots into which the tract could be divided by a stipulated amount per lot, since such computation fails to take into account the cost of improvements, advertising, selling and holding the land prior to sale, which factors cannot be ignored and are too conjectural to be computed.

**3. Same—**

Where a real estate expert testifies that he had personal knowledge of the prices paid in the voluntary sales of comparable tracts, such testimony is competent as substantive evidence of the value of the tract in question.

**4. Same—**

A real estate expert may testify as to his opinion of the value of the land in question even though his opinion be based in part on hearsay knowledge of the prices paid in voluntary sales of similar tracts in the vicinity, and he may testify to this effect without testifying as to what such sale prices actually were, since such testimony is not for the purpose of showing what such other prices were but to show how the witness arrived at his opinion of value.

**5. Same—**

The prices paid at voluntary sales of land similar to the land condemned at about the time of the taking are admissible as independent evidence of value of the land taken, and it is within the sound discretion of the trial judge to determine whether the facts are sufficiently similar to render the testimony admissible as evidence of the value of the land taken.

APPEAL by defendants from *Johnston, J.,* November 18, 1963, Session of FORSYTH.

Proceedings for condemnation of an easement in perpetuity for right of way for highway purposes.

Defendants owned a tract of land containing 5.3 acres situate in Winston Township, Forsyth County. On 7 October 1960 plaintiff, State Highway Commission, filed its complaint, declaration of taking and notice of deposit. The easement taken covers 2.12 acres of defendants' tract, and is a part of highway project No. 8.28307. Commissioners of appraisal were appointed on 2 July 1962 and filed their report on 17 July 1962. Plaintiff excepted to the damages determined by the Commissioners and requested a trial by jury in superior court.

The jury awarded $8,647 damages and judgment was entered accordingly. Defendants appeal.

*Attorney General Bruton, Assistant Attorney General Lewis and Trial Attorney Hudson for plaintiff.*
   *Deal, Hutchins and Minor and Edwin T. Pullen for defendants.*

MOORE, J.   The principal assignments of error relate to the competency of certain evidence.

Defendants' 5.3 acre tract, before the taking of the 2.12 acre right of way, was triangular in shape and the topography was irregular with undeveloped woodland on the south side which dropped off sharply to a bottom area at a creek on the north side. At the eastern boundary a small area around an abandoned house site had previously been cleared. The right of way runs northeast and southwest over and across the tract, leaving only .15 of an acre north of the right of way, and 3.18 acres south of the right of way.

W. Douglas Conrad, son of defendants, testified that the highest and best use to which the land was adaptable immediately before the taking was for residential subdivision, and before the taking he had "worked up a development of this property for residential purposes by making . . . maps with respect to it, with the idea of going to the City for permission to redevelop it into residential lots." He produced at the trial a map he had made, showing a street down the center, running generally east and west, with lots on both sides — 14 lots in all. He stated that it was "made prior to the time of condemnation," and it illustrates his testimony "with respect to the possible division of the property for residential purposes."

The property had not been actually subdivided on the grounds, no streets or lots had been laid out, and no improvements had been made. It was raw land in its original undeveloped state. However, there were residential subdivisions adjoining and nearby.

The witness stated that the value of the property before the taking of the right of way was $83,250. When asked by defendants' counsel how he arrived at this value he stated: "Well, if we multiply, if we take 14 times, or rather 9 times a minimum figure of 7,500 . . ." The court sustained objection to this last quoted testimony, and also excluded the map. All further testimony with respect to the number of lots into which the subject land could be divided, offered as a basis for determining value, was likewise excluded.

Defendants insist that (1) "the evidence offered . . . with respect to the number of residential lots that could be placed in the tract . . . was competent in explaining . . . before and after valuation," and (2) the map should have been admitted to illustrate the testimony of

witnesses as to the highest and best available use of the land, and that it is capable of subdivision.

The judge did not strike the testimony of the witness that the value of the property before the taking was $83,250, nor did he strike the testimony of any of defendants' witnesses as to value. The ruling of the court was to the effect that a designated number of lots multiplied by a price per lot is not a proper basis for determining value of undeveloped land which is suitable for subdivision. The ruling is correct. It is apparent that defendants intended to get before the jury a number of lots in a theoretical subdivision and a price per lot, and by the process of multiplication fix a value upon the tract as a whole. There had been no subdivision; the property was raw undeveloped land. The jury's inquiry was the fair market value of the property as a whole in its condition at the time of the taking, for future residential subdivision and development. All parties agreed that its highest and best capability was for residential subdivision.

"The measure of conpensation is not . . . the aggregate of the prices of the lots in which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all of the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed. . . . The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use." 4 Nichols on Eminent Domain, 3d Ed., § 12.3142(1), pp. 176-181. The fair market value of undeveloped land immediately before condemnation is not a speculative value based on an imaginary subdivision and sales in lots to many purchasers. It is the fair market value of the land as a whole in its then state according to the purpose or purposes to which it is best adapted and in accordance to its best and highest capabilities. It is not proper for a jury to consider an undeveloped tract of land as though a subdivision thereon is an accomplished fact. Such undeveloped property may not be valued on a per lot basis. *Barnes v. Highway Commission,* 250 N.C. 378, 109 S.E. 2d 219; *Light Co. v. Moss,* 220 N.C. 200, 17 S.E. 2d 10; *Land Co. v. Traction Co.,* 162 N.C. 503, 78 S.E. 299.

Under proper circumstances a map of a proposed subdivision of undeveloped land is admissible to illustrate and explain the testimony of witnesses as to the highest and best available use of the property and that it is capable of subdivision. *Barnes v. Highway Commission, supra; Ellis v. Ohio Turnpike Commission,* 124 N.E. 2d 441 (Ohio 1955); *Campbell v. City of New Haven,* 125 A. 650 (Conn. 1924); *Wichita*

*Falls & N. W. Ry. Co. v. Holloman,* 114 P. 700 (Okla. 1911). But where such map is admitted in evidence, the inclusion of a price per lot noted thereon or by testimony of witnesses is incompetent and should be excluded. *Arkansas State Highway Commission v. Witkowski,* 364 S.W. 2d 309 (Ark. 1963); *Thornton v. City of Birmingham,* 35 S. 2d 545 (Ala. 1948). Such map should not be admitted where it is calculated to mislead the jury into allowing damages for improvements not in existence. *Rothenberger v. City of Reading,* 146 A. 104 (Pa. 1929). The trial court is clothed with discretion to admit or exclude such evidence in accordance with the particular circumstances presented. *Roy v. State,* 191 A. 2d 522 (N.H. 1963).

Under the circumstances of the instant case, the exclusion of the map was not error, for the following reasons:

(1). There was no contest as to the best and highest capability of the property. There was no contention by the plaintiff that it was not suitable for residential development or that it was incapable of practical subdivision. These matters were repeatedly conceded.

(2). The map was prepared by defendants' son. There was no showing that he is a civil engineer or that it was made from an actual survey. It appears to be a purely theoretical drawing designed to show a maximum number of lots. From the description given by witnesses of the nature of the terrain, it is apparent that the map does not take into consideration the contour of the land and does not purport to be a practical subdivision according to good engineering practices. See *Arkansas State Highway Commission v. Witkowski, supra; United States v. .15 of an Acre of Land,* 78 F. Supp. 956 (S.D., Me. 1948); *Wichita Falls & N. W. Ry. Co. v. Holloman, supra.*

(3). The jury was permitted to view the property and the boundaries were pointed out and the nature and location of the property observed.

*Ayden v. Lancaster,* 197 N.C. 556, 150 S.E. 40, involves elements not present in the case at bar, and is not authority for defendants' position. See *Barnes v. Highway Commission, supra* (250 N.C. 378, 389).

Defendants also assign as error the admission of certain evidence offered by plaintiff. Several expert real estate appraisers testified that they based their opinions of the value of the subject property in part on voluntary sales of comparable undeveloped lands. They described and gave the locations of the lands involved in these sales — one of the tracts adjoined defendants' property. They were permitted to say that they knew the sales prices. The witnesses who did not have first-hand

knowledge of the sales were not permitted to state the prices paid. One witness, Lewis Hubbard, who testified that he knew of his own knowledge the sales prices of two of the tracts was permitted to state the amounts paid per acre.

Defendants contend that the testimony of the experts was incompetent and prejudicial (1) because it was based on hearsay and could not be considered as substantive evidence, and (2) because the lands involved in the sales were not comparable to the *locus in quo.*

"A witness who has knowledge of value gained from experience, information and observation may give his opinion of the value of specific real property. . . ." Stansbury: North Carolina Evidence, 2d. Ed., § 128, p. 300. "The fact that certain elements are not independently admissible in evidence . . . does not bar their consideration by an expert witness in reaching an opinion. Thus, it has been said: 'An integral part of an expert's work is to obtain all possible information, data, detail and material which will aid him in arriving at an opinion. Much of the source material will be in and of itself inadmissible evidence but this fact does not preclude him from using it in arriving at an opinion. All of the factors he has gained are weighed and given the sanction of his experience in his expressing an opinion. It is proper for the expert when called as a witness to detail the facts upon which his conclusion or opinion is based and this is true even though his opinion is based entirely on knowledge gained from inadmissible sources.' (*People v. Ganghi Corp.,* 194 C.A. (2d) 427, 15 Cal. Rep. 25)." 5 Nichols on Eminent Domain, 3d. Ed., § 18.42(1), p. 256. Accord: *State v. Arnold,* 341 P. 2d 1089 (Ore. 1959).

"Dealing with direct testimony, it has been held that in the determination of fair market value of property taken in a condemnation case, evidence of price for which similar property has been sold in the vicinity may be admissible upon two separate theories and for two distinct purposes. First, such evidence may be admissible as substantive proof of the value of the condemned property, or secondly, it may be admissible, not as direct evidence of the value of the property under consideration, but in support of, and as background for, the opinion testified to by an expert as to the value of the property taken." 5 Nichols on Eminent Domain, 3d Ed., § 21.3(2), p. 437. See also 32 C.J.S., Evidence, § 546(117), p. 445.

Witness Hubbard had personal knowledge of two sales of similar property and the prices paid. His testimony with respect to these sales and prices was competent and admissible as substantive proof of the value of the condemned property.

The challenged testimony of the other expert witnesses was not incompetent as hearsay. These witnesses, on direct examination, described the similar properties and stated they knew the sales prices, but not at first-hand, and that their opinions as to the value of the condemned property were based in part thereon. They did not state what the sales prices of the similar properties were. An expert witness may testify as to the basis of his opinion because it is not offered to show the truth or falsity of such matters, but how the witnesses arrived at a value. It is therefore not hearsay evidence. Stansbury: North Carolina Evidence, 2d Ed., § 138, pp. 335-337; *State v. Oakley,* 356 S.W. 2d 909 (Tex. 1962). The witness may be cross-examined fully with respect to the matters he took into consideration in arriving at a value of the condemned property.

It is settled law in North Carolina that the price paid at voluntary sales of land similar to condemnee's land at or about the time of the taking is admissible as independent evidence of the value of the land taken. *Barnes v. Highway Commission, supra; Morrison v. Watson,* 101 N.C. 332, 7 S.E. 795. It is within the sound discretion of the trial judge to determine whether there is sufficient similarity to render the evidence of such sales admissible. *Highway Commission v. Coggins,* 262 N.C. 25, 136 S.E. 2d 265; *Highway Commission v. Pearce,* 261 N.C. 760, 136 S.E. 2d 71; *Barnes v. Highway Commission, supra.* We are of the opinion, after careful consideration of the evidence in the record, that the court did not abuse its discretion in determining that the undeveloped lands hold in the vicinity in 1958 and 1960 were sufficiently similar to the condemned land to render the voluntary sales thereof admissible as evidence of the value of the condemned land.

The other assignments of error have been carefully considered. In them we find no error sufficiently prejudicial to require a new trial. They present no new or unsettled questions of law.

No error.