MARY L. BARNES AND HUSBAND, J. T. BARNES, JR.; VIRGINIA L. IRVIN AND HUBAND, GEORGE L. IRVIN, JR.; BARBARA L. HANES AND HUSBAND, FRANK B. HANES, AND WACHOVIA BANK AND TRUST COMPANY, TRUSTEE UNDER THE WILL OF NANCY L. LASATER, PETITIONERS, v. NORTH CAROLINA STATE HIGHWAY COMMISSION, RESPONDENT.

(Filed 12 June, 1959.)

**1. Eminent Domain § 5—**

Just compensation for the taking of a part of a tract of land is to be measured by the difference between the fair market value of the property as a whole immediately before and the fair market value of the remainder immediately after the appropriation, and in arriving at this difference consideration must be given to the value of the land taken considered as an integral part of the entire tract, and to the general and special benefits accruing to the landowner with respect to the land not taken.

**2. Same—**

Separate and independent parcels of land belonging to the same landowner may not be considered in assessing damages to lands not taken or in offsetting benefits resulting thereto.

**3. Same—**

Whether two or more parcels of land of the same landowner constitute a single tract or separate and independent tracts for the purpose of assessing damages to lands not taken and the offsetting of special benefits, is one of law for the court, although where there is doubt as to the predicate facts the court may submit issues to the jury under proper instructions.

**4. Same—**

Whether several parcels of land of the same landowner constitute but a single tract for the purpose of assessing damages to lands not taken and the offsetting of special benefits is to be determined according to the facts in each case upon the basis of unity of ownership, physical unity and unity of use. It is not required for unity of ownership that a party have the same quantity or quality of estate in all parts of the tract. Unity of use is often applied as controlling although it is limited to present use, and possible future uses may not be considered upon this question.

**5. Same— Both parcels of petitioners' land held properly considered as a single tract for purposes of assessing special benefits.**

Petitioners' land was divided by an easement conveyed for and used as a private paved road, but the tract was a physical unity acquired at one time, and at the time of the taking consisted of open fields and woodland, with most of each parcel being zoned for residential purposes and only the southern portion of one of the parcels being zoned for commercial purposes. *Held:* Both parcels were properly considered as a single tract in assessing damages to the land not taken and in offsetting special benefits resulting thereto from the taking of a part of

the northern parcel for highway purposes, and the difference in zoning relates to future uses and ought not to be considered on this question.

**6. Same—**

The fair market value of land as the basis for compensation is to be ascertained by assuming the existence of a buyer who is ready, able and willing to buy, but under no necessity to do so.

**7. Same—**

The fair market value of land within the rule of ascertainment of compensation is not limited to its value for the use to which the land was put at the time of the taking, but all capabilities of the land and its adaptability to other uses should be considered to the extent that such possible uses affects its then market value.

**8. Eminent Domain § 6—**

Petitioners' land consisted of fields and woodland situated within the limits of a municipality and surrounded by high-type residential properties and business areas. *Held:* The fair market value of the land is not limited to its value as undeveloped land, and petitioners were entitled to show that the land was suitable and available for division into lots for business and residential purposes as a prospective use affecting its market value.

**9. Same—**

Even though the adaptability of undeveloped land to use for residential and business purposes is so feasible as to affect its present market value, and it is competent for witnesses to testify as to its present market value taking into consideration such prospective uses, it is not competent for the jury to consider such undeveloped tract as though a subdivision thereon were an accomplished fact, and witnesses may not testify as to its speculative value based on the aggregate value of all possible lots less the cost of development.

**10. Same—**

Even though the adaptability of undeveloped land to use for residential and business purposes is so feasible as to affect its present market value, a map of the property showing the land divided into lots is not competent as substantive evidence but is competent solely for the purpose of illustrating and explaining the testimony of the witnesses as to the adaptability of the land to such uses.

**11. Evidence § 22—**

Ordinarily maps of the *locus in quo* are competent in evidence solely for the purpose of explaining or illustrating the testimony of the witnesses.

**12. Appeal and Error § 59—**

The language of an opinion of the Supreme Court must be read in connection with the facts in the case in which the language is used.

**13. Eminent Domain § 6—**

It would seem that the reasonable probability that petitioners' land

not taken would be rezoned is competent on the question of special benefits thereto resulting from the taking of a part of petitioners' property for highway purposes.

**14. Appeal and Error § 41—**

Appellants waive their objection to the admission of testimony when other witnesses are permitted to testify to the same import without objection.

**15. Eminent Domain § 6—**

Whether the price paid in a voluntary sale of nearby property is competent in ascertaining the fair market value of land taken in eminent domain proceedings depends upon whether the two tracts are sufficiently similar for the value of one to be relevant in ascertaining the value of the other, which is a question to be determined in the sound discretion of the trial judge upon the *voir dire*, and exclusion of such evidence in this case is upheld, it appearing that the two tracts were markedly dissimilar in nature, condition and zoning classification.

**16. Evidence § 58—**

The right to cross-examine a witness upon every phase of his examination in chief is an absolute right and not a privilege.

**17. Eminent Domain § 6—**

An expert who has testified in condemnation proceedings as to the value of the petitioners' land may be cross-examined with respect to the sales prices of nearby property to test his knowledge of values and for the purpose of impeachment, but such cross-examination must be controlled and confined within the rules of competency, relevancy and materiality, and testimony of the witness' appraisal of a dissimilar contiguous tract, while competent to impeach the witness' testimony, is incompetent for the purpose of establishing the value of the tract condemned.

**18. Same—Appellants held not prejudiced by limitation of cross-examination of expert as to appraisals of other tracts in the neighborhood.**

The action of the trial court in sustaining an objection to a question asked an expert witness on cross-examination whether he had not appraised another parcel of land in the vicinity for a stipulated price will not be held for error when the two tracts are so dissimilar that the value of one is not competent and relevant in establishing the value of the other and appellants are given opportunity to cross-examine the witness in regard to the basis of his separate appraisals, it being apparent that appellants, under the guise of cross-examination, were attempting to get before the jury the specific amount of the appraisal of the other tract for the purpose of inducing a more liberal award.

APPEAL by petitioners from *Gambill, J.,* November 17, 1958, Civil Term of FORSYTH.

On 25 June, 1956, the respondent, North Carolina State Highway

Commission, in exercise of its right of eminent domain took a portion of petitioners' lands for a right of way for highway purposes. The right of way was taken in connection with respondent's project of relocating and improving U. S. Highways Nos. 158 and 421 in and through the city of Winston-Salem. It is a part of what is known as the East-West Expressway which will be designated as a part of Interstate Highway No. 40 and U. S. Highways Nos. 158 and 421. In so far as said right of way relates to this action, it will be hereinafter referred to as Expressway. It is 260 feet wide, but is wider at its intersection with Knollwood Street in order to accommodate access ramps at this location. The highway constructed thereon is a four-lane highway, with two lanes for travel proceeding in each direction. It is a limited-access highway.

The lands of the petitioners involved in this proceeding contained 46.86 acres before the taking. All of it lies within the municipal limits of the city of Winston-Salem. Respondent took 12.19 acres for said Expressway. All petitioners' land at the time of the taking was undeveloped and consisted of open fields and woodlands. Its boundaries are irregular. A branch or creek runs from west to east through the property. About three-fourths of the area is north of the creek. The land slopes downwardly from the north to the creek and the grade is upward from the creek to the southern boundaries. At the time of the taking Knollwood Street was the only city street that traversed the property. It runs north and south and approximately through the middle of the land and intersects South Stratford Road south of the property. A paved road, twenty feet wide, makes out from Knollwood Street just south of the creek and runs eastwardly to the Thruway Shopping Center, which lies immediately east of petitioners' land. This road is in a 40-foot easement of right of way which was conveyed by petitioners' predecessors in title. This road will be hereinafter referred to as the Easement. Knollwood Street and the Easement divided the land into three tracts. The portion lying west of Knollwood Street contained 15.92 acres, and will be hereinafter referred to as tract No. 1. The area lying east of Knollwood Street and north of the Easement contained 24.22 acres, and will be referred to as tract No. 2. The part situated east of Knollwood Street and south of the Easement contained 6.72 acres, and will be referred to as tract No. 3.

The Expressway crosses petitioners' property in an east-west direction, runs parallel to the creek and is a short distance north of the creek. The Expressway runs under Knollwood Street at the intersection, and the interchange ramps at this intersection are the

only means of access to the expressway from petitioners' land.

Along its northern and western boundaries petitioners' property abuts excellent residential subdivisions and developments. This is also true as to the eastern boundary north of the Expressway. Below the Expressway on the east and along the southern boundaries is a fast-growing business area, especially along South Stratford Road. Petitioners' land has a frontage of 468 feet on South Stratford Road. At the time of the taking all petitioners' property was zoned under the City Ordinance as a "Residence A-1" district (single-family dwellings), except: (1) along South Stratford Road for a depth of 200 feet it was zoned "Business B" (retail trade, general business and outlying shopping areas), and (2) along the western boundary and south of the Expressway it was zoned "Residence A-2" (single- family and multi-family dwellings).

Additional facts necessary to a decision are set out in the opinion.

A petition was filed by the owners for the purpose of obtaining compensation for the 12.19 acres taken by respondent and for recovery of alleged damages to the property not taken. Respondent filed answer and requested that alleged benefits, general and special, to the lands not taken be assessed as offsets. On 30 July, 1958, the Clerk of Superior Court appointed commissioners to determine the damages due the petitioners. The commissioners filed their report 1 August, 1958, and assessed the sum of $132,500.00 with interest thereon from the date of taking. The Clerk entered judgment in accordance with the report. The petitioners and the respondent excepted to the report of the commissioners and to the judgment and appealed to the Superior Court.

The cause was tried in Superior Court before Judge Gambill and a jury. The jury awarded damages in the sum of $53,000.00 with interest from the date of taking. From judgment in conformity with the verdict petitioners appealed and assigned error.

*Vaughn, Hudson, Ferrell & Carter, R. M. Stockton, Jr. and Norwood Robinson for petitioners, appellants.*

*Attorney General Seawell, Assistant Attorney General Wooten, H. Horton Rountree, and Womble, Carlyle, Sandridge & Rice for respondent, appellee.*

MOORE, J. The appellants made thirty-five assignments of error in the record on this appeal. Decision in this case requires discussion of the following questions of law raised by the assignments of error.

(1) Appellants' original petition did not include tract No. 3, the

6.72 acres lying east of Knollwood Street and south of the Easement. Respondent moved before the Clerk to have this portion of the land included in the proceeding. The Clerk denied the motion and respondent excepted. The motion was heard in Superior Court preliminary to the trial. The judge made an order adding tract No. 3 to the proceeding and adjudging, in effect, that the whole property, 46.86 acres, "is properly to be included for consideration in the assessment of damages and offsetting general and special benefits, if any . . ."

Appellants contend that the Expressway crosses no part of tract No. 3, that it is separated from tract No. 2 by the Easement, that a portion of it is zoned for business while the other tracts are zoned for residences, and that the inclusion thereof was prejudicial to them. On the other hand, appellee contends that tracts 2 and 3 are logically a single tract crossed only by a private easement, that the portion immediately south of the Easement has the same zoning classification as tract No. 2, that the portion zoned for business is only a small area of about 2 acres abutting on South Stratford Road, and that a fair assessment of damages and benefits requires that the entire tract be considered.

It must be assumed that the respondent desired the inclusion of tract No. 3 because it proposed to offer evidence that this portion was benefited by the Expressway. It is evident that petitioners desired it excluded for the reason that, in their opinion, they could show no substantial damage to this area by construction of the Expressway.

Where a portion of a tract of land is taken for highway purposes, the just compensation to which the landowner is entitled is the difference between the fair market value of the property *as a whole* immediately before and immediately after the appropriation of the portion thereof. In arriving at this difference consideration must be given to the general and special benefits accruing to the landowners with respect to the land not taken. That difference includes everything which affects the value of the property taken in relation to the *entire* property affected. *Gallimore v. Highway Commission*, 241 N.C. 350, 354, 85 S.E. 2d 392.

The question is: Was the 6.72 acres, tract No. 3, such an affected part of the whole tract as to require its inclusion in order to determine what was just compensation?

"It is well settled that when the whole or a part of a particular tract of land is taken for the public use, the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which results from the taking." Nichols on Eminent Domain (3rd Edition), sec. 14.3, p. 426; *Sharp*

*v. United States,* 191 U. S. 341, 48 L Ed. 211, 24 S. Ct. 114, aff'g. 50 C.C.A. 597, 112 F. 893, 57 L.R.A. 932. The North Carolina statute provides that "in all instances (where a portion of a tract of land is taken for highway purposes) the general and special benefits shall be assessed as offsets against damages." (Parentheses ours) G.S. 136-19. It follows that, when the State takes a part or all of a tract of land for highway purposes, it is not entitled to offset against damages the benefits to other separate and independent parcel or parcels belonging to the landowner whose land was taken.

Ordinarily the question, whether two or more parcels of land constitute one tract for the purpose of assessing damages for injury to the portion not taken or offsetting benefits against damages, is one of law for the court. However, where the doubt is factual, depending upon conflicting evidence, the court may submit issues to the jury under proper instructions. Anno: 6 A.L.R. 2d 1207, and cases there cited.

In the instant case the facts are not in dispute.

There is no single rule or principle established for determining the unity of lands for the purpose of awarding damages or offsetting benefits in eminent domain cases. The factors most generally emphasized are unity of ownership, physical unity and unity of use. Under certain circumstances the presence of all these unities is not essential. The respective importance of these factors depends upon the factual situations in individual cases. Usually unity of use is given greatest emphasis.

The parcels claimed as a single tract must be owned by the same party or parties. It is not a requisite for unity of ownership that a party have the same quantity or quality of interest or estate in all parts of the tract. But where there are tenants in common, one or more of the tenants must own some interest and estate in the entire tract. *Tyson v. Highway Commission,* 249 N.C. 732, 107 S.E. 2d 630. Under some circumstances the fact that the land is acquired in a single transaction will strengthen the claim of unity. But the fact that the land was acquired in small parcels at different times does not necessarily render the parcels separate and independent. However, there must be a substantial unity of ownership. Different owners of adjoining parcels may not unite them as one tract, nor may an owner of one tract unite with his land adjoining tracts of other owners for the purpose of showing thereby greater damages. *Light Co. v. Moss,* 220 N.C. 200, 207, 17 S.E. 2d 10.

The general rule is that parcels of land must be contiguous in order to constitute them a single tract for severance damages and benefits.

But in exceptional cases, where there is an indivisible unity of use, owners have been permitted to include parcels in condemnation proceedings that are physically separate and to treat them as a unit. It is generally held that parcels of land separated by an established city street, in use by the public, are separate and independent as a matter of law. *Todd v. Railroad Co.*, 78 Ill. 530 (1875); *Wellington v. Railroad Co.* (Mass. 1895), 41 N.E. 652. "When land is unoccupied and so not devoted to use of any character, and especially when it is held for purposes of sale in building lots, a physical division by wrought roads and streets creates independent parcels as a matter of law . . . (but) If the whole estate is practically one, the intervention of a public highway legally laid out but not visible on the surface of the ground is not conclusive that the estate is separated." Nichols on Eminent Domain (3rd Edition), sec. 14.31(1), Vol. 4, pp. 437-8. Lots separted by a public alley but in a common enclosure have been held to be a single property. Mere paper division, lot or property lines, and undeveloped streets and alleys are not sufficient alone to destroy the unity of land. "If the owner's land is merely crossed by the easement of another, the fee remaining in him, and the sections so made are not actually devoted, as so divided, to wholly different uses, they are to be considered actually contiguous and so as a single parcel or tract." 6 A.L.R. 2d 1200, sec. 2.

As indicated above, the factor most often applied and controlling in determining whether land is a single tract is unity of use. Regardless of contiguity and unity of ownership, ordinarily lands will not be considered a single tract unless there is unity of use. It has been said that "there must be such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used." *Peck v. Railway Co.* (1887), 36 Minn. 343, 31 N.W. 217. The unifying use must be a *present* use. A mere intended use cannot be given effect. If the uses of two or more sections of land are different and inconsistent, no claim of unity can be maintained. But the mere possibility of adaptibility to different uses will not render segments of land separate and independent. If a map of a proposed subdivision is made and the lots shown thereon are actually a compact body of land, used and occupied as an entirety, they are to be treated as one tract notwithstanding the division into imaginary lots. It has been held that where suburban lots acquired under separate titles are divided by an established highway, they will be considered as one tract where the owner

uses them together for tillage and cultivation in connection with his residence on one of them. *Welch v. Railway Co.* (1890), 27 Wis. 108. ". . . (I)f a tract of land, no part of which is taken, is used in connection with the same farm, or the same manufacturing establishment, or the same enterprise of any other character as the tract, part of which was taken, it is not considered a separate and independent parcel merely because it was bought at a different time, and separated by an imaginary line, or even if the two tracts are separated by a highway, railroad, or canal." 18 Am. Jur., Eminent Domain, sec. 270, p. 910.

For a full discussion, exhaustive annotation and citations of authority with respect to the principles of law set out in the four preceding paragraphs, see 6 A.L.R. 2d 1200-1214, and Nichols on Eminent Domain (3rd Edition), sections 14.3, 14.31 and 14.4, Vol. 4, pp. 426-445.

In the instant case, we are of the opinion, and so hold, that the court was correct in including the 6.72-acre segment, tract No. 3, in the petition for consideration in the assessment of damages and offsetting benefits. There was unity of ownership and it was so stipulated. It was also stipulated that petitioners acquired the 46.86 acres in a single transaction. There was physical unity of tracts 2 and 3. It was divided only by a private easement of right of way, the fee to which was retained subject to the use of the right of way. No actual present use was being made of the tracts at the time of the taking. The petitioners were holding the land for possible future sale for subdivision or for future sale of lots. The tracts constituted a reasonably compact area of the same type of land. Both segments were reasonably necessary and related to the proper and best use by the owner of the land taken. The contention of appellants with respect to zoning takes into consideration possible future use and ought not to be regarded on this point under pertinent rules of law. Yet, it should be observed that the land immediately to the south of the easement was given the same "residence" classification as the land to the north of the easement. The portion zoned for business is at the extreme south end of tract No. 3 and constitutes less than one-third of its area.

The law will not permit a condemnor or a condemnee to "pick and choose" segments of a tract of land, logically to be considered as a unit, so as to include parts favorable to his claim or exclude parts unfavorable.

(2) After the taking of the land for the Expressway, petitioners caused a civil engineer to make two maps of the 46.86 acres. One map shows a residential subdivision containing streets and 86 building lots. This map does not show the Expressway and is made with-

out reference thereto. The other map shows the Expressway, streets and 62 lots. The area fronting on South Stratford Road and which had been zoned for business is shown on both maps but is not subdivided. This area contains slightly more than 2 acres. The property itself was not actually subdivided on the ground.

These maps were identified at the trial and petitioners offered them in evidence as substantive evidence of practical residential subdivisions in conformity with those adjoining the property and to show that the land was capable of being subdivided into residential lots. Upon objection the court refused to admit the maps as substantive evidence. Petitioners excepted. An expert realtor later testified that petitioners' property, immediately before and immediately after the taking, was capable of and adaptable to practical residential subdivision of a high type. The court then admitted the maps in evidence to illustrate and explain the testimony of the witness.

During the course of the trial petitioners sought to elicit from certain of their witnesses testimony as to the value of the property before and after the taking based on the number of lots and the value per lot, less estimated cost of subdividing and developing. Upon objection this testimony was excluded. Petitioners excepted.

When a governmental agency takes or appropriates private property for public use, the law imposes upon it a correlative duty to make just compensation to the owner of the property appropriated. *Sale v. Highway Commission*, 242 N.C. 612, 617, 89 S.E. 2d 290. When the property is appropriated by the State Highway Commission for highway purposes, the measure of damages is the difference between the fair market value of the entire tract of land immediately before the taking and the fair market value of what is left immediately after the taking. *Proctor v. Highway Commission*, 230 N.C. 687, 691, 55 S.E. 2d 479. "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted—that is to say, what is it worth from its availability for valuable uses?" *Power Co. v. Power Co.*, 186 N.C. 179, 183-4, 119 S.E. 213, quoting from *Boom Co. v. Patterson*, 98 U. S. 403. The jury should take into consideration, in arriving at the fair market value of the land taken, all the capabilities of the property, and all the uses to which it could have been applied or for which it was adapted, which affected its value in the market at the time of the taking and not merely the

condition it was in and the use to which it was then applied by the owner. But compensation should not exceed just compensation, and value should not exceed fair market value. The application of the concept of fair market value does not depend upon the actual availability of one or more prospective purchasers, but assumes the existence of a buyer who is ready, able and willing to buy but under no necessity to do so. *Gallimore v. Highway Commission, supra.*

But the fair market value of the lands of petitioners immediately before the taking was not a speculative value based on an imaginary subdivision and sales in lots to many purchasers. It was the fair market value of the lands as a whole in its then state according to the purpose or purposes for which it was then best adapted and in accordance with its best and highest capabilities.

Petitioners' lands at the time of the taking consisted of fields and woodlands. They are situated within the city limits of Winston-Salem and surrounded by high-type residential properties and valuable business areas. It would be manifestly unfair to appraise them merely as agricultural lands and forests. In valuing property taken for public use, the jury is to take into consideration "not merely the condition it is in at the time and the use to which it is then applied by the owner," but must consider "all of the capabilities of the property, and all of the uses to which it may be applied, or for which it is adapted, which affect its value in the market." *Light Co. v. Moss, supra* (220 N.C. at p. 205), and cases cited. "The particular use to which the land is applied at the time of the taking is not the test of its value, but its availability for any valuable or beneficial uses to which it would likely be put by men of ordinary prudence should be taken into account." *R. R. v. Armfield,* 167 N.C. 464, 466, 83 S.E. 809, quoting from Pierce on Railroads, p. 217.

But the value to be placed on land taken under the right of eminent domain must not be speculative or based on imaginary situations. The uncontradicted testimony in the instant case is that the best and highest capabilities of petitioners' land was for subdivision into lots, a small part for business, the greater part for residences. "It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all of the lots are disposed of

cannot be ignored and is too uncertain and conjectural to be computed." Nichols on Eminent Domain (3rd Edition), Vol. 4, section 12.3142 (1), pp. 107-109. It is proper to show that a particular tract of land is suitable and available for division into lots and is valuable for that purpose, but it is not proper to show the number and value of lots as separated parcels in an imaginary subdivision thereof. In other words, it is not proper for the jury in these cases to consider an undeveloped tract of land as though a subdivision thereon is an accomplished fact. Such undeveloped property may not be valued on a per lot basis. The cost factor is too speculative. See Law of Eminent Domain—Lewis (3rd Edition), Vol. 2, section 707, p. 1236; 18 Am. Jur., Eminent Domain, sec. 347, p. 991; 29 C.J.S., Eminent Domain, sec. 160, pp. 1027-8; *Land Co. v. Traction Co.*, 162 N.C. 503, 506, 78 S.E. 299; *Philadelphia v. United States*, 53 F. Supp. 492 (1943); *City of Los Angeles v. Hughes* (Cal. 1927), 262 P. 737, 738; *Investment Co. v. McIntosh County* (N.D. 1950), 45 N.W. 2d 417; *Public Service Co. v. Development Co.* (W. Va. 1926), 132 S.E. 380.

In *Ayden v. Lancaster*, 197 N.C. 556, 150 S.E. 40, a civil engineer was permitted to testify that 90 to 100 cemetery lots could be included in a plot of 1 1/5 acres. He did not testify to the value per lot. This Court held that the testimony was competent since it was "merely a simple question of arithmetic" and "some evidence to indicate, no doubt, the damage to respondent's other land in having constantly so many new graves dug contingent to it." The Court further stated "The witness indicated the method of subdivision, but did not put any value on the land. He described the way the subdivision could be made and stated the facts. We can see no objection to this testimony." In some jurisdictions condemnation for cemetery purposes seems to furnish an exception to the majority rule stated in the preceding paragraph. *St. Agnes Cemetery v. State of New York* (N. Y. 1957), 143 N.E. 2d 377, 380.

In estimating the fair market value of land before and after the appropriation of a portion thereof for public use, all the capabilities of the property, and all the uses to which it may be applied, or for which it is adapted, which affect its value in the market are to be considered. In short, everything which affects the value of the property taken in relation to the entire property affected must be considered, for compensation must be full and complete. But all the factors affecting value must be considered only with respect to their effect upon the fair market value of the property, as of the time immediately before and immediately after the taking in the then state of the property taken as a whole. *Gallimore v. Highway Commission, supra,* and cases

there cited. The Court in *Land Co. v. Traction Co., supra,* (162 N.C. 503) paraphrasing the opinion in *R. R. v. Stocker,* 128 Pa. 233, said: "(I)t was held that the jury could not value a tract upon the theory of what it might bring when platted and divided up into building lots; but they could inquire what a present purchaser would be willing to pay for it in its present condition, and not what a speculator might be able to realize out of a resale in the future." To the same effect is *Light Co. v. Moss supra,* (220 N.C. 200) where it is said at p. 208: "(T)he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as a measure of value but to the full extent that such prospect or demand for such use affected the market value at the time respondents were deprived of their (property)." (Parentheses ours). "The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use." Nichols on Eminent Domain (3rd Edition), Vol. 4, section 12.3142 (1), p. 109.

It is manifest that the court was correct in excluding testimony as to value of the land based on supposed subdivisions and the sale of lots at an estimated price per lot after deducting an estimated cost per lot for development. Such a method of valuation is too speculative and remote. The question is: What was the fair market value of the property as a whole in its then state for future subdivision?

"Any evidence which aids the jury in fixing a fair market value of the land, and its diminution by the burden put upon it, is relevant . . ." *Abernathy v. R. R.,* 150 N.C. 97, 109, 63 S.E. 180; *Gallimore v. Highway Commission, supra,* at page 354. Testimony that the condition, location and surroundings of the land rendered it available for high-type subdivision, and that it was physically capable of practical subdivision in relation to its surroundings, was properly admitted. Such evidence having been adduced, the court properly ruled that the maps showing subdivisions were relevant and competent to illustrate and explain the testimony as to the possibility and manner of subdividing. "A witness may use a map . . . to illustrate his testimony and make it more intelligible to the court and jury . . . The North Carolina Court has often said that materials of this sort are not evidence, or are not substantive evidence, and that they can be used only to 'illustrate' or 'explain' the testimony of a witness." North Carolina Evidence: Stansbury, sec. 34, pp. 50-53. Stansbury points out that there has been a trend toward a relaxation of the rule and the admission of maps and similar materials as substantive evidence. But it is well to bear in mind "that the language of (Court)

opinions must be read in connection with the facts of the case in which the language was used." *Light Co. v. Moss, supra,* at page 209. The area at the crest of a lofty mountain or in an inaccessible swamp might well be subdivided on paper, but the value of such a map in revealing truth to a jury would be less than nothing. It is only against the background of pertinent testimony, refined by proper cross-examination, that maps such as the ones offered in this case can be of value in revealing truth.

The court properly excluded the maps as substantive evidence. As stated above, they were properly admitted to illustrate and explain the pertinent testimony. The petitioners had the full benefit of the maps upon those phases of the case to which they properly pertained.

(3) Over the objection of the petitioners, witnesses for the respondent were permitted to testify that there was a reasonable probability that a part of petitioners' land would be rezoned by the City and changed from "residence" to "business" property in the near future. One witness testified that "all petitions for rezoning that have been made in this area had been allowed by the planning board."

On this question, the court instructed the jury as follows: "In arriving at your verdict as to the fair market value of the property you may take into consideration the reasonable probability of a change of the zoning ordinance in the near future and the influence that that circumstance might have on the value of the land."

Our Court has never passed upon this question directly, but in *Power Co. v. Power Co., supra,* (186 N.C. at p. 183), it is said: ". . . (T)he measure of compensation to be awarded the owner (in a condemnation proceeding) is the fair market value, taking into consideration any and all uses or purposes to which the property is reasonably adapted and might, with reasonable probability, be applied." (Parentheses ours). To the same effect is *Light Co. v. Clark,* 243 N.C. 577, 580, 91 S.E. 2d 569.

The weight of authority in other jurisdictions is well declared as follows: "As stated in *Beverly Hills v. Anger* (1932), 127 Cal. App. 223, 15 P. 2d 867, a zoning ordinance restricting the use of property is proper evidence for determining the market value of land being condemned, for the reason that in determining the market value of realty, all circumstances and conditions which become either an advantage or a detriment to the property should be considered. . . . (I)f the land taken is not presently available for a particular use by reason of a zoning ordinance or other restriction imposed by law, but the evidence tends to show a reasonable probability of a

change in the near future in the zoning ordinance or other restriction, then the effect of such probability upon the minds of purchasers generally may be taken into consideration in fixing the present market value. However, if the possible change in a zoning ordinance restricting the use of the property condemned is purely speculative, such possibility is not to be considered." Anno: 173 A.L.R. 265, 266.

The principle is well stated in *Board of Education v. 13 Acres of Land* (Del. 1957), 131 A. 2d 180, in the seventh headnote: "In ascertaining market value in an eminent domain proceeding reasonable probability of a rezoning of the condemned property, to permit the highest and best use, may be considered in determining such market value." To the same effect are: *U. S. v. Meadow Brook Club* (C.C.A. 2d, 1958), 259 F. 2d 41; *U. S. v. 29.28 Acres of Land* (D. C. N. J. 1958), 162 F. Supp. 502; *Roads Commission v Warringer* (Md. 1957), 128 A. 2d 248; *Bergeman v. Roads Commission* (Md. 1958), 146 A. 2d 48; *State v. Gorga* (N. J. 1957), 138 A. 2d 833; *State v. Williams* (Mo. 1956), 289 S.W. 2d 64; *City of Austin v. Cannizzo* (Tex. 1954), 267 S.W. 2d 808; *School District v. Flodine* (Cal. 1957), 314 P. 2d 581; *People v. Dunn* (Cal. 1956), 297 P. 2d 964; *City of Menlo Park v. Artino* (Cal. 1957), 311 P. 2d 135; *City of Beverly Hills v. Anger* (Cal. 1930), 294 P. 476; *In Re: Garden City* (N.Y. 1956), 167 N. Y. Supp. 2d 166; *Board of Commissioners v. Tallahassee B & T Co.* (Fla. 1958), 100 S. 2d 67.

But an expert witness, after testifying to the reasonable probability of rezoning, may not give an opinion as to the worth of the property for business. He may only consider the influence of the probability on value in giving his opinion of the worth of the property. *School District v. Stewart* (Cal. 1947), 185 P. 2d 585.

In the instant case several of petitioners' witnesses on cross-examination testified without objection that they had taken into consideration the reasonable probability of rezoning in placing a value on the property. So, in any event, the objections were waived. *Price v. Gray*, 246 N.C. 162, 165, 97 S.E. 2d 844, and cases there cited.

(4) Prior to or about the time of the taking of petitioners' property for the Expressway, respondent bought a 13.2-acre right of way immediately adjoining petitioners' property to the east and paid therefor the sum of $300,000.00. Counsel for petitioners, on direct examination, asked their witness: "I'll ask you if you know that approximately 13 acres of land were sold . . . abutting on the east side of this property right here, on or about April 10, 1956, for $300,000.00?" Upon objection the witness was not permitted to answer. He would have responded in the affirmative had he been per-

mitted to answer. In the absence of the jury the court heard the contentions of counsel with respect to the 13.2-acre tract and the competency of the evidence sought to be elicited.

Later in the trial an expert realtor, who was testifying for the respondent and who had previously made an appraisal for the owners of the 13.2-acre tract, was asked on cross-examination by counsel for petitioners the following question: "Now, Mr. Minish, you yourself appraised approximately 13 acres of property directly east of this property and abutting on this property for $300,000.00 didn't you?" Objection to the question was sustained. If permitted to answer the witness would have testified: "I was the agent for the owner of the property facing both sides of Stratford Road . . . and the 13.2-acres was appraised at $300,000.00 by me."

In the absence of the jury the court heard evidence and contentions of counsel with respect to the 13.2-acres. The evidence tended to show the following facts. The portion of petitioners' property taken for the Expressway was all zoned for residences. A small portion of the 13.2-acre tract was zoned for residential purposes, the remainder for business and commercial purposes. The 13.2-acre tract included 1027 feet of frontage on both sides of South Stratford Road; one side was zoned for business, the other for commercial purposes. Comparatively the witness had appraised the business and residential property on the 13.2 acres higher than on petitioners' land, on a foot front and acreage basis.

Counsel for petitioners stated that the question on cross-examination was for the purpose of impeaching the witness, and that they did not desire to show that respondent bought the 13.2-acre tract or what the respondent paid for it. He further stated: "All we want to do is ask him the total amount, and let him break it down."

The court ruled that the 13.2 acres and petitioners' lands were not comparable tracts and that the witness would not be permitted to testify to the total appraised value placed by the witness on the 13.2 acres, but that the witness might testify to the comparative values per acre of residential property and the comparative values per foot front of business property he had placed on the 13.2-acre tract and petitioners' property, respectively, and give his reasons therefor.

Upon return of the jury to the courtroom the witness was cross-examined briefly concerning the 13.2-acre tract. The gist of the testimony elicited was that he appraised the residential property of the 13.2-acre tract at "considerably more than $3000.00" per acre.

He had previously testified that he appraised the residential property of petitioners' lands at $3000.00 per acre.

It is held in most jurisdictions that the price paid at voluntary sales of land similar to condemnee's land at or about the time of the taking is admissible as independent evidence of the value of the land taken. But the land must be similar to the land taken, else the evidence is not admissible on direct examination. Actually no two parcels of land are exactly alike. Only such parcels may be compared where the dissimilarities are reduced to a minimum and allowance is made for such dissimilarities. Nichols on Eminent Domain (3rd Edition), Vol. 4, section 12.311(3), pp. 55, 59; *Belding v. Archer* 131 N.C. 287, 315, 42 S.E. 800.

It is within the sound discretion of the trial judge to determine whether there is a sufficient similarity to render the evidence of the sale admissible. It is the better practice for the judge to hear evidence in the absence of the jury as a basis for determining admissibility. Anno: 118 A.L.R. 904.

In the instant case the court was correct in excluding evidence on direct examination of the sale of the 13.2 acres of land adjacent to petitioners' land. The lands were markedly dissimilar in nature, condition, and zoning classification, and the court's ruling will not be disturbed.

"One of the most jealously guarded rights in the administration of justice is that of cross-examining an adversary's witnesses. . . . (C)ross-examination may be made to serve three general purposes: (1) To elicit further details of the story related on direct examination, in the hope of presenting a complete picture which will be less unfavorable to the cross-examiner's case; (2) to bring out new and different facts relevant to the whole case; (3) to impeach the witness, or cast doubt upon his credibility." North Carolina Evidence (Stansbury), pp. 54, 56, 57. "The right to have an opportunity for a fair and full cross-examination of a witness upon every phase of his examination-in-chief, is an absolute right and not a mere privilege." *Milling Co. v. Highway Commission,* 190 N.C. 692, 696, 130 S.E. 724.

The majority rule is that an expert witness may be questioned on cross-examination with respect to the sales prices of nearby property to test his knowledge of values and for the purpose of impeachment, but not for the purpose of fixing value. This is especially true if the witness used such sales as a basis for his appraisal of the property taken, or if he had actually appraised the property sold. Nichols on Eminent Domain (3rd Edition), Vol. 4, section

12.311(3), p. 40; Orgel on Valuation under Eminent Domain (2d Edition), Vol. 1, section 145, p. 612-3; *Railway Co. v. Southern Pacific Co.* (Cal. 1936), 57 P. 2d 575; *Stone v. Railroad Co.* (Pa. 1917), 101 A. 813; *Cline v. Gas & Electric Co.* (Kan. 1957), 318 P. 2d 1000; *Steck v. City of Wichita* (Kan. 1956) 295 P. 2d 1068; *City of Beverly Hills v. Anger* (Cal. 1932), 15 P. 2d 867; *State v. Peek* (Utah, 1953), 265 P. 2d 630; *Utility District v. Kieffer* (Cal. 1929), 278 P. 476; *Felin v. City of Philadelphia* (Pa. 1946), 47 A. 2d 227; *Parrish v. State* (Tex. 1958), 310 S.W. 2d 709; *Pennsylvania Co. v. City of Philadelphia* (Pa. 1920), 112 A. 76.

The North Carolina Court has not decided the point directly. There is an indication that this Court does not rigidly follow the majority rule. In *Highway Commission v. Privett*, 246 N.C. 501, 506, 99 S.E. 2d 61, a witness was asked on cross-examination if he knew the values of any other property in the area or the prices at which such properties had been sold, and he answered in the negative. *Bobbitt, J.*, speaking for the Court said: "The testimony so elicited was relevant solely to the credibility of the witness, and the weight, if any, to be given to his testimony. Let it be noted that none of the questions undertook to elicit testimony as to the valuations or sales prices of other properties, the questions being directed to whether the witness *had opinions or knowledge* with reference thereto." It would seem that utmost freedom of cross-examination with reference to sales and sales prices in the vicinity should be accorded the landowner, subject to the right and duty of the presiding judge to exercise his sound discretion in controlling the nature and scope of the cross-examination in the interest of justice and in confining the testimony within the rules of competency, relevancy and materiality.

It is not competent to cross-examine with reference to the sale price of a parcel of land where the price was fixed by a compromise judgment. *Power & Light Co. v. Sloan*, 227 N.C. 151, 154, 41 S.E. 2d 361. "The price paid in settlement of condemnation proceedings or the sum paid by the condemner for similar land, even if proceedings have not been begun, is not admissible. Such payments are in the nature of compromise, to avoid the expense and uncertainty of litigation, and are not fair indications of market value; . . . A sale otherwise competent is not necessarily inadmissible because the condemner was the purchaser, if it does not appear that the sale was in connection with or in anticipation of condemnation proceedings." 18 Am. Jur., Eminent Domain, Sec. 352, p. 996. Cross-examination as to prices paid by condemnor for other tracts for the same project is improper. *U. S. v. Foster* (C.C.A. 8th. 1942), 131 F. 2d 3.

In the instant case counsel for petitioners disclaimed any intention to cross-examine with respect to the sale of the 13.2-acre tract to respondent or the price paid therefor by respondent. Indeed the question on cross-examination of the witness Minish was whether he had appraised the tract for $300,000.00.

It has been held that where the witness appraised the adjacent land, he shall be required on cross-examination to state what he appraised it for, but that no reference should be made to a sale thereof to condemnor or to the price paid by condemnor. *U. S. v. Foster, supra.*

The Court might well have permitted the witness to answer the question. But it does not appear to us that the failure to do so was prejudicial to the petitioners. Because of the dissimilarity of the tracts, testimony adduced thereby was incompetent on the question of value. The total appraisal value placed on the land by the witness would not of itself have impeached the witness or have shown lack of knowledge of values in the vicinity. It was apparent upon examination of the witness on the *voir dire* that he had appraised the business and residential property in the 13.2-acre tract on a front foot and acreage basis at a higher value than petitioners' land. The court ruled that he might be fully cross-examined as to these matters. Petitioners did not avail themselves of this opportunity. The conclusion is inevitable that petitioners desired only to get the $300,000.00 figure before the jury to induce thereby a liberal award. This within itself would violate the applicable rule of evidence, since such evidence under the circumstances cannot be considered on the question of value. *Ziegler v. Sypher* (Mich. 1944), 16 N.W. 2d 676.

We have carefully examined and considered the other assignments of error and the contentions of appellants with respect thereto. Prejudicial error has not been made to appear. *In Re Gamble,* 244 N.C. 149, 156, 93 S.E. 2d 66.

No error.