An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1302

NORTH CAROLINA COURT OF APPEALS

Filed: 4 June 2014

DEPARTMENT OF TRANSPORTATION,
     Plaintiff,

v.

GUS SCHAD,
     Defendant.

Stanly County
No. 11 CVS 809; 11 CVS 845

Appeal by plaintiff from order entered 1 July 2013 by Judge Kevin M. Bridges in Stanly County Superior Court. Heard in the Court of Appeals 10 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Mary S. Mercer, for plaintiff-appellant.*
>
> *Singletary & Webster, P.C., by H. Earl Singletary, Jr., for defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Plaintiff North Carolina Department of Transportation ("DOT") appeals from an interlocutory order permitting Gus Schad ("Defendant") to present evidence in a condemnation action valuing the land affected by the taking as a subdivision with individual lots. DOT contends that Defendant's land is an "imaginary subdivision" pursuant to *Barnes v. N.C. State Highway*

*Comm'n*, 250 N.C. 378, 109 S.E.2d 219 (1959), and that, as such, the jury should only hear evidence valuing Defendant's property as one undeveloped tract of land. Despite the interlocutory nature of DOT's appeal, DOT claims the trial court's order affects a substantial right warranting our immediate review. However, for the following reasons, we disagree with DOT's jurisdictional argument and dismiss DOT's appeal as interlocutory.

## I.   Factual & Procedural History

On 11 and 18 July 2011, DOT filed complaints, declarations of taking, and notices of deposit in Stanly County Superior Court condemning real property owned by Defendant near the Stanly County Airport.[1]  On 6 March 2012, Defendant filed answers in both cases wherein Defendant described the property affected by the takings as a subdivision entitled "Stanly Airport Industrial Park."  Defendant also alleged that the deposits made by DOT were inadequate and requested jury trials on the issue of just compensation.  That same day, the trial court entered orders disbursing DOT's deposits in both cases—$56,800 and

---

[1] The complaint filed on 11 July 2011 was designated as 11 CVS 809.  The complaint filed on 18 July 2011 was designated as 11 CVS 845.

$83,000, respectively—as credits against just compensation determinations obtained by Defendant in future proceedings.

On 1 April 2013, DOT moved for a hearing pursuant to N.C. Gen. Stat. § 136-108 (2013) to determine any and all issues raised by the pleadings other than the issue of damages. By stipulation of the parties, both actions filed by DOT were combined for hearing. On 11 April 2013, DOT filed a plat pursuant to N.C. Gen. Stat. § 136-106 (2013) identifying the property and areas taken in both actions. DOT's Section 108 motion was heard on 15 April 2013. Evidence presented at the hearing tended to show the following.

Defendant acquired the land at issue by purchases made in 1987 and 1988. Defendant purchased the property in order to develop it into an industrial park at the Stanly County Airport. When Defendant purchased the property, it was zoned as "rural/agricultural." Subsequently, however, Defendant applied for and obtained a "light industrial" zoning classification for the property.

In 1993, Defendant had a survey performed and a subdivision plat map drawn dividing the property into 47 individual lots. On 17 December 1993, Defendant filed the plat map, labeled "Stanly County Airport Industrial Park," in the Stanly County

Registry. In addition to designating the individual lots, the plat map has roads laid out and indicates the placement of one-half inch rebar with plastic caps on each corner of each individual lot. The roads have not been paved on the property, but they have been "cut" by a bulldozer and Defendant has performed some grading work on the roads. Defendant built a spec building on one of the lots.

On 18 February 1998, Defendant recorded a "Declaration of Covenants, Conditions and Restrictions for Airport Industrial Park" with the Stanly County Register of Deeds. The document defines the covenants, conditions, restrictions, reservations, and easements benefiting and burdening each lot within the subdivision. The trial court found as fact that these covenants were still in effect at the time of the taking.[2]

Evidence presented at the hearing also revealed that Defendant sold three lots in the subdivision prior to the taking. One lot was sold in March 1998 to a private citizen,

---

[2] Paragraph 19 of the declaration states that it will "continue in full force and effect until January 1, 2010, at which time it shall automatically expire, unless extended by the affirmative vote of those owning a majority of the acreage within the property." At the automatic expiration date, Defendant was still the majority owner of the acreage within the property. On cross-examination, Defendant indicated that, because the takings took place in July 2011, the covenants would have expired before the July 2011 takings. On redirect, Defendant stated that he, as the majority owner, considered the covenants still in effect.

and two additional lots were sold to the State of North Carolina in December 2001.

In August 2005, Defendant transferred 1.04 acres to the City of Albemarle, which placed two large generators on the property for industrial use. The City also placed a sign on the property advertising the subdivision as a "Prime Power Industrial Park." The Stanly County Economic Development Commission worked with Defendant prior to the taking and marketed the property as "the state's first industrial park specifically designed to attract new industrial customers with the need for reliable, uninterruptible electric power." As a result of this marketing, soil and environmental tests were performed on part of the property and a 200,000 square-foot pad-ready site was developed that is ready for a prospective buyer to build upon.

In 2008, DOT contacted Defendant about his property for the first time to discuss the State's plan for a road project near the airport. Defendant subsequently signed a right of entry agreement, and DOT initiated the present condemnation proceedings in July 2011. Defendant stated that the State's plans for the road project "had set him back several years in moving forward with his plans for the park."

Based on the foregoing and other evidence presented at the hearing, the trial court entered a written order on 1 July 2013 that characterized the property affected by the taking as follows:

> 20. The taking by [DOT] was a taking of individual lots located in the subdivision shown in Plat Book 16, Page 8, Stanly County Registry as the "Stanly County Airport Industrial Park" and not vacant real property by the acre.

The trial court concluded:

> 6. That [Defendant's] actions were taken pursuant to his plan to develop the Stanly County Airport Industrial Park and not in anticipation of a just compensation condemnation proceeding.
>
> 7. That [Defendant's] plans to develop the industrial park were adversely affected by [DOT's] plan to build a road through his property.
>
> 8. That it would be unfair and unreasonable for [DOT] to hinder the development of [Defendant's] property and then prevail on its conclusion that the property was not an actual, existing subdivision.
>
> 9. Based on the facts of this case, [Defendant] should be allowed to present evidence to the jury regarding the value of each individual lot affected by the taking.
>
> . . . .
>
> [Defendant], at the time of trial before the jury, shall be permitted to present evidence of the value of each individual lot

> immediately before the taking herein and [D]efendant shall be permitted to present evidence of the value of each individual lot immediately after the taking by [DOT].

DOT filed timely notice of appeal from the trial court's order.

## II.  Jurisdiction

On appeal, DOT contends that the trial court erred in its order by permitting Defendant to present evidence at trial regarding the value of each individual lot affected by the taking.  In DOT's view, the property being condemned should be valued as one undeveloped tract of vacant land because, pursuant to *Barnes*, the property is an "imaginary subdivision" and not an accomplished fact.  *See Barnes*, 250 N.C. at 388-89, 109 S.E.2d at 227-28 (stating that "the value to be placed on land taken under the right of eminent domain must not be speculative or based on imaginary situations" and that it is "not proper for the jury . . . to consider an undeveloped tract of land as though a subdivision thereon is an accomplished fact"); *see also Town of Hillsborough v. Crabtree*, 143 N.C. App. 707, 709-10, 547 S.E.2d 139, 140-41 (2001) (discussing and applying the rule in *Barnes*).

However, before this Court can reach the merits of DOT's contention, we must determine if this Court has jurisdiction to hear DOT's interlocutory appeal.  *See Dep't of Transp. v.*

*Olinger*, 172 N.C. App. 848, 850, 616 S.E.2d 672, 674–75 (2005) ("[I]f an appealing party has no right of appeal, an appellate court on its own motion should dismiss the appeal even though the question of appealability has not been raised by the parties themselves." (quotation marks and citation omitted) (alteration in original)). DOT argues that the trial court's order is immediately appealable as affecting a substantial right. Moreover, DOT believes that given the substantial right affected, immediate appeal is mandatory, not permissive. For the following reasons, we hold that no substantial right has been affected by the trial court's order and dismiss DOT's appeal as interlocutory.

Our condemnation statutes provide that either party to a condemnation action shall have a right of appeal "in the same manner as in any other civil actions." N.C. Gen. Stat. § 136-119 (2013). Generally, however, there is no right of immediate appeal from an interlocutory order in a civil action. *Atl. Coast Conference v. Univ. of Maryland*, ___ N.C. App. ___, ___, 751 S.E.2d 612, 615 (2013). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey*

*v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Thus, because the trial court's order merely permitted Defendant to introduce evidence valuing the affected property as a subdivision in a subsequent damages trial, the order did not dispose of the case below and DOT's appeal is interlocutory in nature.

However, an "immediate appeal is available from an interlocutory order or judgment which affects a substantial right." *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (quotation marks omitted); *accord* N.C. Gen. Stat. §§ 1-277(a), 7A-27(b)(3) (2013). Our Supreme Court has defined a "substantial right" as "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person] is entitled to have preserved and protected by law: a material right." *Sharpe*, 351 N.C. at 162, 522 S.E.2d at 579 (quotation marks and citation omitted) (alteration in original).

Whether an interlocutory ruling affects a substantial right requires consideration of "the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978). Here, the trial

court's order was entered after a Section 108 hearing.  That statute provides:

> After the filing of the plat, the judge, upon motion and 10 days' notice by either the Department of Transportation or the owner, shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken.

N.C. Gen. Stat. § 136-108 (2013).  Our Supreme Court has delineated the parameters of the substantial right exception in this context.  In *N.C. State Highway Comm'n v. Nuckles*, 271 N.C. 1, 14, 155 S.E.2d 772, 784 (1967), the Court stated that the purpose of a Section 108 hearing is to "eliminate from the jury trial any question as to what land [DOT] is condemning and any question as to its title."  Accordingly, the Court held that "should there be a fundamental error in the judgment resolving these vital preliminary issues, ordinary prudence requires an immediate appeal."  *Id.*

Furthermore, in *Dep't of Transp. v. Rowe*, 351 N.C. 172, 521 S.E.2d 707 (1999), following a jury trial on the issue of just compensation, the Court was presented with the question of whether the former property owners were required to immediately appeal the trial court's pre-trial order unifying their four

remaining tracts of land for purposes of valuation.  *Id.* at 173, 521 S.E.2d at 708.  The Court held that the pre-trial order did not affect a substantial right and that the defendants were not required to immediately appeal.  *Id.*  The Court acknowledged that *Nuckles* had received expansive treatment in determining what issues in a Section 108 hearing affect a substantial right, but explicitly disavowed those cases and limited the holding to "questions of title and area taken."  *Id.* at 176, 521 S.E.2d at 709.  Thus, the Court reasoned that because the "[d]efendants contest[ed] only the unification of the four remaining tracts [and] not what parcel of land is being taken or to whom that land belongs[,] . . . the trial court's order [did] not affect any substantial right" warranting immediate review.  *Id.*  Furthermore, the Court stated:

> Although the parties to a condemnation hearing must resolve all issues other than damages at the N.C.G.S. § 136-108 hearing, that statute does not require the parties to appeal those issues before proceeding to the damages trial.

*Id.* at 176, 521 S.E.2d at 710.

Here, DOT contends that the characterization of the property affected by the taking—*i.e.*, whether it is a subdivision or an undeveloped tract—is a vital preliminary issue that must be settled before the question of just compensation is

presented to the jury. We disagree. Similar to *Rowe*, Defendant is the undisputed owner of the land affected by the taking and the area being condemned is certain. Accordingly, DOT's contention is without merit.[3]

Nonetheless, as an alternative basis to invoke our jurisdiction, DOT contends that the existence of easements on the affected property, which were created when Defendant filed the declaration of covenants in 1998, raise questions of title that must be immediately appealed pursuant to *Nuckles*. *See N.C. Dep't Of Transp. v. Stagecoach Vill.*, 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005) ("The possible existence of an easement, the basis upon which the trial court ordered joinder of the unit owners, is a question affecting title; therefore, the trial court's order is subject to immediate review."). While we agree that the existence of an easement may, under certain circumstances, warrant immediate review to resolve an issue of title, that is not the case here. First, Defendant is the undisputed owner of the land that is affected by the taking and subject to the recorded covenants. DOT has not alleged that any other necessary parties should be joined in the instant action

---

[3] We note that our holding on this issue is consistent with an unpublished decision of this Court in *N.C. Dep't of Transp. v. Williams*, 168 N.C. App. 728, 609 S.E.2d 498, 2005 WL 465557 (2005) (unpublished), which we find persuasive.

nor challenged Defendant's title. Second, and more fundamentally, the basis of the trial court's order, from which DOT appeals, concerns the characterization of the land in question. The order does not address the issue of additional easement holders whose interests may be affected by the taking. Accordingly, DOT's argument on this point is without merit.

Notably, we acknowledge that in *Town of Hillsborough*, this Court addressed the merits of the issue presented in this case in an interlocutory appeal taken from a pre-trial order. However, that case did not discuss jurisdiction and therefore does not stand for the proposition that DOT's interlocutory appeal affects a substantial right warranting immediate review. Thus, in deciding whether to dismiss DOT's appeal here, we are not constrained by *Town of Hillsborough's* holding. *Cf. In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). However, we are bound to our Supreme Court's decision in *Rowe*. *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) ("[The Court of Appeals] has no authority to overrule decisions of [the] Supreme Court and [has]

the responsibility to follow those decisions until otherwise ordered by the Supreme Court." (second and third alterations in original) (quotation marks and citation omitted)). Pursuant to *Rowe*, we hold that a Section 108 order concerning the characterization of the property at issue does not affect a substantial right for purposes of interlocutory appellate review.

## III. Conclusion

For the foregoing reasons, we dismiss DOT's appeal as interlocutory.

DISMISSED.

Judge STROUD concurs.

Judge DILLON concurs in the result in a separate opinion.

Report per Rule 30(e).

DEPARTMENT OF TRANSPORTATION,
      Plaintiff,

      v.                                    Stanly County
                                            No. 11 CVS 809; 11 CVS 845
GUS SCHAD,
      Defendant.


      DILLON, Judge, concurring in the result.


      I concur in the result reached by the majority, dismissing the present appeal.  I write separately, however, to address what I believe is a point of confusion between the evidentiary ruling made by the trial court and a separate issue, not addressed by the trial court, concerning which lots/land constitute the "entire tract" pursuant to N.C. Gen. Stat. § 136-112(1) (2013) to be evaluated by the jury.

      Since this matter involves a *partial* taking, the proper measure of damages is "the difference between the fair market value of the **entire tract** immediately prior to said taking and the fair market value of the remainder immediately after the taking[.]"  *Id.* (emphasis added).

      Identifying which land constitutes the "entire tract" for purposes of determining just compensation is not a point of

contention where the partial taking involves the only parcel owned by the landowner. However, this identity of the "entire tract" can be an issue of contention if the landowner has an interest in a parcel or parcels *in addition to* the parcel from which the taking is made. In some such cases, the North Carolina Department of Transportation ("DOT") may seek to include a landowner's adjacent parcel as part of the "entire tract," believing that, for example, the new road it is building will increase the value of the landowner's adjacent parcel, thereby reducing the amount of the just compensation award. Conversely, in other cases, the landowner may seek to include an adjacent parcel into the "entire tract," believing that the condemner's project will diminish not only the value of the parcel from which the taking is made, but also the value of his adjacent parcel.

In any event, our Supreme Court has held that the issue of whether to incorporate a landowner's additional parcel(s) as part of the "entire tract" is generally a question of law to be resolved by the trial court. *Barnes v. Highway Comm'n*, 250 N.C. 378, 384, 109 S.E.2d 219, 224 (1959); *see also DOT v. Fernwood Hill Homeowners Ass'n*, 185 N.C. App. 633, 638, 649 S.E.2d 433, 436 (2007). In other words, before a jury may properly

determine the amount of just compensation based on *before and after* values of the subject property, the trial court generally must first determine which land constitutes the "entire tract" by considering certain factors, namely "unity of ownership, physical unity and unity of use[,]" though "the presence of all three unities [between the parcels] is not essential [for the parcels to be considered a single tract]." *Barnes*, 250 N.C. at 384, 109 S.E.2d at 224.

The present case involves a partial taking; that is, the DOT condemned approximately ten acres out of the 177 acres owned by Gus Schad ("Defendant"). Defendant claims that this 177 acres is actually part of a 47-lot industrial park that he created in 1993, when he filed a subdivision plat; that prior to the DOT's partial taking, he sold three of the 47 lots; that the 177 acres he owned at the time of the DOT's taking is actually 44 separate lots; and that the ten acres taken by the DOT runs directly through 21 of those 44 lots.

The only issue ultimately resolved by the trial court at the Section 108 hearing was an evidentiary issue; that is, the decretal portion of the trial court's order merely orders that Defendant "be permitted to present evidence of the value of each individual lot immediately before the taking . . . [and] of the

value of each individual lot immediately after the taking[.]" However, counsel for both parties at oral arguments before this Court suggested that there may be a dispute regarding which land actually constitutes the "entire tract," a different issue entirely from the evidentiary issue addressed in the trial court's order. For instance, counsel for the DOT stated that the parties disagreed as to whether the condemnation involved a partial taking of 177 acres (which consists of 44 lots and proposed roads) or a partial taking of only 21 lots. Likewise, when asked whether all 44 lots "have been affected by the taking, counsel for Defendant responded, "No, your Honor. We're saying 21 lots have been affected by this taking." Likewise, during the Section 108 hearing, counsel for Defendant argued that "it should be 21 separate lots [that] we should be allowed to put on evidence for as damages" and produced an appraiser who testified that he considered the effect of the taking only on the 21 lots, and not on all 44 lots.

The evidentiary ruling made by the trial court allowing Defendant to produce before and after values of lots has no real meaning until the court resolves the conflict – if one, in fact, exists – concerning which lots/land constitute the "entire tract." *See id.* at 390, 109 S.E.2d at 229 (stating that the

parties may introduce relevant evidence to "aid[] the jury in fixing a fair market value of [the entire tract as well as the remainder]"). If the trial court determines that the "entire tract" consists of all 177 acres owned by Defendant, then, based upon the evidentiary ruling by the trial court – a ruling which cannot be appealed at this time – Defendant's evidence for the jury should be based on the *before and after* values of *all* 44 lots, as well as the *before and after* values of any other land that make up the 177 acres[4]. In such case, opinion of value of the "entire tract" that is based only on the *before and after* values of the 21 lots which have been reduced in size by the taking, without any reference to the effect of the taking on the value of the other 23 lots and other land comprising the "entire tract," would probably not be relevant. Alternatively, if the trial court determines that the "entire tract" consists of only the 21 lots which have been reduced in size by the taking, then evidence regarding the change in value of only these 21 lots would be relevant; but evidence regarding any effect on the other 23 lots would not likely be relevant since such evidence would not "aid[] the jury in fixing the fair market value of

---

[4] Based on Defendant's 1993 plat, the industrial park includes proposed roads, in addition to the individual lots.

[either the entire tract – as defined by the trial court – or the remainder]." *Id.*

Accordingly, I believe the trial court should ascertain whether there is, in fact, a dispute as to what property constitutes the "entire tract," and, if so, rule on that issue before proceeding with a trial to determine the amount of just compensation owed. Further, I do not believe that the trial court's evidentiary ruling, allowing Defendant to introduce evidence of individual lot values, precludes the trial court from exercising its role as gatekeeper to allow the jury to consider other types of valuation evidence which the parties may seek to introduce, which do not rely on the value of each individual lot. Rather, the trial court should allow the jury to consider and weigh any evidence that comports with our Rules of Evidence.